Juanita Lou **VORONIN**, Appellant,

v.

Bernard B. **VORONIN**, Appellee.

No. 13987.

Court of Appeals of Texas, Austin.

Nov. 16, 1983.

Rehearing Denied Dec. 14, 1983.

Philip C. Friday, Jr., Austin, for appellant.

William R. Travis, McDaniel & Travis, Austin, for appellee.

Before PHILLIPS, C.J., and EARL W. SMITH and GAMMAGE, JJ.

EARL W. SMITH, Justice.

This is a divorce case in which the trial court, sitting without a jury, entered judgment dissolving the marriage, appointing the wife managing conservator and the husband possessory conservator of the minor child, ordering child support to be paid by the husband, and dividing the estate of the parties. The husband was the petitioner in the trial court, the wife respondent.

The wife, appellant, contends that the trial court erred: in awarding appellee all his non-disability military retirement benefits on the theory that it (the court) was obliged to do so under *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981); in abusing its discretion by dividing the estate unequally in favor of the husband; and in its unequal division of the property because such a division was not supported by any evidence, or in the alternative, was supported by insufficient evidence. For the reasons herein stated, we reverse the judgment of the trial court and remand the cause.

The parties married February 19, 1955, and separated in January 1982. Appellee filed suit February 12, 1982, and the case

was heard September 3, 1982, at which time appellee was forty-eight years of age. The decree of divorce, signed by the court on January 31, 1983, was subsequently re-dated February 1, 1983.

Appellee enlisted in the United States Marine Corps on December 13, 1951. He retired in June 1975, after having served 282 months; thus the parties were married for a total of 244 months during the period of appellee's creditable military service.

In the division of property, the parties agree that the two major assets requiring division by the court were the homestead (valued by the appellant at $38,000 net, and by the appellee at approximately $44,000) and the non-disability military retirement benefits of appellee. Appellee was also receiving military disability payments which are conceded to be his separate property. Appellant sought division of the community property interest and appellee's non-disability military retirement benefits. The record shows that the trial court awarded such benefits to appellee on the premise that under *McCarty v. McCarty, supra,* he was bound to award all the retirement benefits to appellee. This Court must determine whether, at the time of the signing of the divorce decree, or during the time when the trial court had absolute control of the divorce decree, the military pension benefits earned during marriage were property subject to division upon divorce, and if so, whether the trial court abused its discretion in awarding all of the benefits to appellee.

The law in Texas was well established that military benefits earned during marriage were property subject to division. *Taggart v. Taggart,* 552 S.W.2d 422 (Tex. 1977); *Cearley v. Cearley,* 544 S.W.2d 661 (Tex.1976); *Busby v. Busby,* 457 S.W.2d 551 (Tex.1970). However, in *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the United States Supreme Court held that the supremacy clause of the United States Constitution, Article VI, precluded a state court from dividing military non-disability retirement pay on divorce. In *Trahan v. Trahan,* 626 S.W.2d 485, 487 (Tex.1981), the Supreme Court of Texas held that the supremacy clause effectively foreclosed the division of such military retirement benefits.

In *Trahan,* the wife brought suit in 1977 for partition of vested Air Force retirement benefits which had not been divided by property settlements in either of two divorce cases. The trial court concluded that 77.92% of the retirement pay was community property not considered at either divorce proceeding, and awarded the wife 38.96% of benefits accrued to the date of judgment and those which would be paid in the future. On appeal, the Court of Civil Appeals upheld the division of the benefits, but reformed the trial court's judgment relating to the method of the ex-wife's collection of the money judgment for past accrued benefits due her. *See Trahan v. Trahan,* 609 S.W.2d 820 (Tex.Civ.App.1980). The judgment of the trial court and that of the Court of Civil Appeals both preceded *McCarty.* The Supreme Court of Texas, in its opinion handed down *November 18, 1981,* held that *McCarty* controlled its decision on appeal, even though the *McCarty* decision was dated *June 26, 1981,* stating that "it is clear that McCarty controls the disposition of this case." *Trahan v. Trahan, supra,* at 487. That is, the Supreme Court gave effect to *McCarty,* even though the trial court and the Court of Civil Appeals had handed down their respective judgments before the decision in *McCarty.* The Supreme Court, in so holding, said "no final adjudication regarding Jack Trahan's military retirement benefits, therefore, has or will be made until this Court renders its opinion." *Trahan v. Trahan, supra,* at 488.

To determine whether *McCarty* controls this case, we look to the record and the latest decision of the Texas Supreme Court. This divorce case was filed February 12, 1982. The case was heard by the trial court on September 3, 1982. The decree of divorce was originally dated January 31, 1983, six and one-half years after appellee retired and began drawing his non-disability retirement benefits. (Appellant concedes that the January 31, 1983 date of the judgment should be considered as a proper date for

this appeal.) The trial judge made it absolutely clear that he was awarding the retirement benefits to appellee because he felt that he was bound to do so by *McCarty.* The court said:

> Now, I'm just not going to go against *McCarty,* gentlemen, and I am going to award the military and the retirement and disability benefits to Mr. Voronin.

The record shows that the judge and the parties were aware, at time of trial and the court's judgment, of legislation passed by Congress and awaiting the signature of the President, which would overturn the effect of the *McCarty* decision. Again, the court said:

> You can call the President up, Mr. Savage [Attorney for appellant], and tell him to do something, maybe before I sign the decree or something like that, but I'm not going to hold this thing in abeyance....

When asked to find in the decree that he "was compelled by the *McCarty* decision and therefore did not consider the military retirement as far as dividing the property is concerned," the court refused to do so, and again said "I've told you that I'm not going against *McCarty* ... and as far as I am concerned—the court is concerned, it's the law."

Appellant timely filed a motion for new trial on February 23, 1983, in which she urged that before the entry of the court's decree the President of the United States signed into law the Uniform Services Former Spouse's Protection Act, Pub.L. No. 97–252, 96 Stat. 730 (1982) (hereinafter called "The Act"), reversing the effect of *McCarty,* retroactive to June 25, 1981. The motion for new trial was overruled by operation of the law.

The trial court had plenary power under Tex.R.Civ.P.Ann. 329b(c) (Supp.1983) to modify, correct or set aside its judgment for a period of seventy-five days after the judgment was signed. The trial court had absolute control over its judgment for thirty days after the judgment was signed, whether or not a motion for new trial was filed. Tex.R.Civ.P.Ann. 329b(d) (Supp. 1983).

We hold that *Cameron v. Cameron,* 641 S.W.2d 210, 212–13 (Tex.1982) is dispositive of this case. In *Cameron,* Paul Cameron joined the U.S. Air Force on June 22, 1954. He married Sue Akers September 29, 1957, and retired from the Air Force in August, 1977. The divorce suit was filed in Texas in 1978. On March 29, 1979, the trial court awarded the wife thirty-five percent of the gross military retirement funds received by the husband. Noting that under *McCarty,* the Supreme Court had held that the supremacy clause of the United States Constitution foreclosed the division of military non-disability retirement pay on divorce, the Supreme Court of Texas then held:

> On September 9, 1982, the President signed into law the Uniform Services Former Spouse's Protection Act, Pub.L. No. 97–252, 96 Stat. 730 (1982). *The purpose of the act was to reverse the effect of the McCarty decision.* Under the Act a divorce court may *divide military retirement pay between the spouses in accordance with the law of the jurisdiction of that court. The Act limits such division of retirement pay to periods after June 25, 1981.* Id. § 1002(a) [to be codified as 10 U.S.C.A. § 1408(c)(1)].
>
> \* \* \* \* \* \*
>
> The divorce decree, dated March 29, 1979, awards Sue Cameron "thirty-five percent (35%) of the gross present and future military retirement presently being received." Sue Cameron is entitled to receive that thirty-five percent, but not for the period from March 25, 1979 to June 25, 1981. Therefore, we affirm that part of the trial court judgment awarding Sue Cameron thirty-five percent of the military retirement pay, but only for the period beginning after June 25, 1981. (emphasis added).

*Cameron v. Cameron, supra,* at 212–213. *See Segrest v. Segrest,* 649 S.W.2d 610, 613, fn. 2 (Tex.1983) where the Supreme Court said:

> Title 10, Section 1408 of the Department of Defense Authorization Act of 1983 makes *McCarty nugatory with respect to its application to judgments rendered af-*

ter the date of the decision. *Cameron v. Cameron,* 641 S.W.2d 210 (Tex.1982); 10 U.S.C.A. § 1408(c)(1); 128 Cong.Rec. H5999–6000 (daily ed. August 16, 1982 conference explanation). (emphasis supplied)

The Texas Supreme Court correctly recognized that the purpose and intent of the quoted language of subsection (c)(1) of the Act—indeed the whole Act—is "to reverse the effect of the *McCarty* decision." *Cameron v. Cameron, supra,* at 212. That purpose is affirmed in the Congressional Conference Report. U.S.Code Cong. & Admin. News (1982), 1570.

*Cameron* was followed by the Missouri Court of Appeals in *Coates v. Coates,* 650 S.W.2d 307 (Mo.App.1983). There, the trial court, by judgment *entered on June 29, 1981,* awarded the wife twenty-five percent of the husband's military non-disability retirement pay. The husband, relying on *McCarty,* contended that his military retirement pay was not subject to division. The judgment of the trial court was affirmed on appeal, the appellate court citing with approval *Cameron v. Cameron, supra.* The Missouri court noted that the Act contained the provision requiring the "Secretaries concerned" to prescribe uniform regulations for its administration, and noted that the regulations appear in proposed form at 48 Fed.Reg. 4004 (1983). *Coates v. Coates, supra,* at 311. Section 63.6(7) of the proposed regulations provide, in pertinent part:

"all court orders awarding a division of retired pay as property issued on or after June 26, 1981, will be enforced...."

See also *In Re Marriage of Ankenman,* 142 Cal.App.3d 833, 191 Cal.Rptr. 292, 294 (1983), where the court held that the legislative history of the Uniformed Services Former Spouses' Protection Act clearly indicates the intent of Congress "to abrogate all applications of the *McCarty* decision." (citations omitted) The court held that the use of the date that *McCarty* was decided as a reference in 10 U.S.C.A. § 1408(c)(1) evidences a legislative intent that the law relative to community property treatment of military retirement pensions be as though *McCarty* did not exist, i.e. that such pensions would be subject to division as community property before and after June 25, 1981.

◼ As was true in *Trahan v. Trahan, supra,* the judgment of the trial court in the instant case was not final. Following *Trahan v. Trahan, supra,* at 488, we hold that no final adjudication regarding appellee's military retirement benefits in this case has or will be made until this Court renders a decision. *Cameron v. Cameron, supra,* controls. In this case the trial court still had control of its judgment when *McCarty* was overturned by the Act. The appellee, in his brief, concedes this to be true, but argues that the trial court considered the Act in its division of community property and, having considered the change in the law, made a fair and equitable division of the community property. To the contrary, in the last pages of the statement of facts, the trial judge makes it clear that he was bound by *McCarty* and on that basis, awarded appellee *all* the retirement benefits. We hold that the trial court erred in holding that the community estate had no divisible interest in the military non-disability retirement payments of appellee. The community interest in such benefits in this case equalled the months of marriage while the appellee was in the military, divided by the number of months of creditable military service of appellee. Thus the community interest was 86.525%.

◼ If we assume, as appellee insists, that the trial court was aware of the Act and considered it when making division of the community property, then we further hold that the trial court abused its discretion in dividing the property. We have reviewed the division, as we are required, to see if the trial court abused its discretion. *Zamora v. Zamora,* 611 S.W.2d 660, 662 (Tex.Civ.App.1980, no writ); *Boriack v. Boriack,* 541 S.W.2d 237 (Tex.Civ.App.1976, writ dism'd). We are aware that the trial court has wide discretion in this area. *Cockerham v. Cockerham,* 527 S.W.2d 162 (Tex.1975). However, such discretion is not unlimited—there must be some reasonable

basis for the unequal division. *Tarin v. Tarin,* 605 S.W.2d 392 (Tex.Civ.App.1980, no writ). The division must not be inequitable; circumstances should justify awarding more than one-half to one spouse. *Thomas v. Thomas,* 525 S.W.2d 200 (Tex.Civ.App. 1975, no writ).

In this case, the appellee was forty-eight years of age at the time of the divorce. We take judicial notice that he had a life expectancy, as a Texas male, of twenty-four more years. U.S. Dept. of Health, Education and Welfare, U.S. Decennial State Life Tables, June 1975; *McKibben v. McKibben,* 567 S.W.2d 538, 539 (Tex.Civ.App.1978, no writ); 31A C.J.S. Evidence § 99 (1964). The record shows that the gross retirement pay of appellee at time of divorce was $1173.77 per month. He also receives $505 per month non-taxable separate property disability pay. In addition, he was gainfully employed at a salary of approximately $2,000 per month. His total gross monthly income was, therefore, in excess of $3,500 per month. Appellant's monthly income was $700 per month. Based upon appellee's life expectancy, the total gross retirement income he would receive would be $338,045.76. The present value, discounted, of that amount would be greatly in excess of $100,000.00 The trial court, notwithstanding appellee's contention that he could not do so, properly took judicial notice of a table promulgated by the Comptroller of Public Accounts showing the computations necessary to evaluate the discounted present value of an annuity such as appellee's military pension. Based upon appellee's age of forty-eight, the computation to arrive at the present value of appellee's gross retirement pay is: $1173.77 × 12 months × 11.7308 × 1.0272. The result of such computation is $169,725.41. The interest of the community estate under *Taggart v. Taggart, supra,* to wit, 86.525%, would be $146,854.91, all of which was awarded to appellee. Using the Comptroller's formula and applying it to appellee's disposable pay under the Act the following result is reached. After deducting withholding tax and an allotment, appellee's disposable pay under the Act was $833.30 at the time of the divorce. Again applying the State Comptroller's present value formula computation as follows: $833.00 × 12 months × 11.7308 × 1.0272, we arrive at a present value of appellee's retirement income, based upon disposable pay, in an amount of $120,450.57. The community estate interest therein, 86.525%, would be $104,219.85.

In his oral argument, appellee stated that the net value of the community estate, excluding non-disability military retirement pay was approximately $60,000 of which 80% was awarded to appellant and 20% to appellee. Using his own argument, appellee received approximately $12,000. When the present value of appellee's disposable pay at the time of the divorce is added thereto, i.e. $104,219.85, it is easily seen that the appellee received in excess of $116,000 in community property, whereas the appellant received only $48,000.

Considering the earning capacity of the appellant and all relevant circumstances, the trial court clearly abused its discretion in awarding appellee all the non-disability military retirement pay.

We reverse the judgment of the trial court and remand this cause.