**Jack F. TRAHAN, Appellant,**

v.

**Emma J. TRAHAN, Appellee.**

**No. 14145.**

Court of Appeals of Texas,
Austin.

Oct. 24, 1984.

Rehearing Denied Dec. 19, 1984.

Samuel D. McDaniel, Stubbeman, McRae, Sealy, Laughlin & Browder, Austin, for appellant.

Philip C. Friday, Jr., Austin, for appellee.

Before PHILLIPS, C.J., and POWERS and BRADY, JJ.

BRADY, Justice.

This is a partition suit in which Jack F. Trahan appeals from the district court's judgment awarding his former spouse, Emma J. Trahan, 38.96% of his Air Force non-disability retirement benefits. By cross-point, appellee claims the trial court erred in awarding to her these retirement benefits only from June 25, 1981 rather than from April 30, 1965, the date appellant retired.

## PROCEDURAL HISTORY

### –I–

The Trahans were married on September 4, 1943 and were divorced on January 22, 1963. During this time appellant was a member of the Air Force. (It is stipulated that the Trahans were married 187 months of the 240 months appellant was in the Air Force.) The divorce decree, however, did not award appellee any share of appellant's retirement benefits. Appellant retired from the Air Force on April 30, 1965 and began receiving retirement benefits at that time. The Trahans remarried on October 28, 1970 but were divorced on May 7, 1971. Again, the second divorce decree did not award appellee any interest in appellant's retirement benefits. Both divorce decrees were silent on this matter.

Appellee brought a suit for partition of appellant's retirement benefits and a judgment in her favor was entered on January 19, 1979 awarding her 38.96% of appellant's retirement benefits paid to him since April 30, 1965 and a like percentage of all future non-disability retirement benefits. This judgment was affirmed by the Court of Civil Appeals. *See Trahan v. Trahan,* 609 S.W.2d 820 (Tex.Civ.App.1980). Writ of error was granted by the Supreme Court of Texas and during the pendency of that appeal the United States Supreme Court announced its decision in *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). The Court held in *McCarty* that non-disability retirement pay may not be divided pursuant to state community property laws. The Supreme Court

of Texas, citing *McCarty* and the Supremacy Clause of the United States Constitution, reversed and rendered judgment that Emma J. Trahan take nothing. *See Trahan v. Trahan,* 626 S.W.2d 485 (Tex.1981).

–II–

This present suit was filed by Emma Trahan on February 10, 1983 again seeking to partition appellant's retirement benefits in light of the Uniformed Services Former Spouses' Protection Act, 10 U.S.C.A. § 1408 (West 1983). The district court ordered a partition of appellant's retirement benefits from June 25, 1981, awarding appellee 38.96% of said benefits.

Appellant brings five points of error, the thrust of these points being that the decision of the Supreme Court of Texas in *Trahan v. Trahan,* 626 S.W.2d 485 (Tex. 1981) is *res judicata* as to appellee's present cause filed on February 10, 1983, irrespective of the Uniformed Services Former Spouses Protection Act, 10 U.S.C.A. § 1408 (West 1983). Appellant also claims the court order constitutes an illegal garnishment of his wages.

## McCARTY

The United States Supreme Court held in *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) that non-disability retirement pay may not be divided upon divorce pursuant to state community property laws. Richard McCarty served in the Army for twenty years and during all but two of these years he was married to Patricia McCarty. A California superior court awarded Patricia approximately 45% of her husband's retirement pay. That judgment was affirmed by the California Court of Appeals and writ of certiorari was granted by the United States Supreme Court to decide the question of whether or not "the federal scheme of military retirement benefits preempts all state community property laws with respect thereto, and that ... [state] courts are accordingly precluded by the Supremacy Clause from dividing such benefits ...." *McCarty, supra* at 219 n. 12, 101 S.Ct. at 2734 n. 12. The Supreme Court, citing

*Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), held that "the application of community property principles to military retired pay threatens grave harm to 'clear and substantial' federal interests." *McCarty, supra* 453 U.S. at 232, 101 S.Ct. at 2741. Questions were then raised such as whether or not McCarty would be applied retroactively and whether courts in community property states would now be able to effect a just distribution of the marital estate upon divorce. *See, e.g.,* Raggio & Raggio, *McCarty v. McCarty: The Moving Target of Federal Pre-Emption Threatening All Non-Employee Spouses,* 13 St. Mary's L.J. 505 (1982); Note, *McCarty v. McCarty: The Battle Over Military Nondisability Retirement Benefits,* 34 Baylor L.Rev. 335 (1982); Note, *Military Retirement Pay Not Subject To Division As Community Property Upon Divorce: McCarty v. McCarty,* 19 Hous.L.Rev. 591 (1982).

## UNIFORMED SERVICES FORMER SPOUSES' PROTECTION ACT

In response to the Supreme Court's decision in *McCarty v. McCarty,* Congress passed the Uniformed Services Former Spouses' Protection Act (the Act), codified at 10 U.S.C.A. § 1408 (West 1983). The section of that act relevant to this appeal provides:

Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

*Id.* at (c)(1). "The purpose of [this] act [is] to reverse the effect of the *McCarty* decision." *Cameron v. Cameron,* 641 S.W.2d 210, 212 (Tex.1982). *See also* Newton & Trail, *Uninformed [sic] Services Former Spouses' Protection Act—A Legislative Answer To The* McCarty *Problem,* 46 Tex. B.J. 291, 294–96 (1983).

It is clear that Congress had two goals in mind by passing the Act: reverse the ef-

fect of the *McCarty* decision and provide direct enforcement powers to former spouses seeking payment of retirement benefits previously awarded to them. A reading of the legislative history of the Act shows that Congress intended that the Act nullify the effect of *McCarty;* that is, state courts were to apply state substantive law as if *McCarty* had never existed. The *direct enforcement powers,* however, were to be applied prospectively from February 1, 1983, the effective date of the Act. The following language from Senate Report No. 502 is helpful in this regard:

> The provisions of S. 1814 reversing the effect of the *McCarty* decision are retroactive to June 26, 1981, the date on which the U.S. Supreme Court issued that decision. That is, the committee intends the legislation to restore the law to what it was when the courts were permitted to apply State divorce laws to military retired pay. Former spouses divorced in the interim period between the *McCarty* decision and the effective date of this law will have the opportunity to return to court to have their decrees modified in light of this legislation. However, nothing in the bill would mandate payments out of retired pay which had been disbursed during the period between the date of the *McCarty* decision and the effective date of this legislation. The mechanism for direct payment of court orders for alimony, child support and property distribution would apply only to payments of retired pay for periods beginning on or after the effective date of this legislation.

S.Rep. No. 502, 97th Cong., 2d Sess. 5, *reprinted in* 1982 U.S.Code Cong. & Ad. News 1596, 1599–1600.

This report also provides a section-by-section analysis of 10 U.S.C.A. § 1408 (West 1983). The analysis of subsection (c) is as follows:

> Subsection (c) of section 1408 sets forth several conditions and limitations applicable to court orders served and payments made pursuant to section 1408. Paragraph (1) of subsection (c) provides that, subject to the other limitations of section 1408, a court, as defined by paragraph (1) of subsection 1408(a), may treat the disposable retired or retainer pay payable to a member for pay periods beginning on or after June 26, 1981, either as solely the property of the member or as the property of the member and the member's spouse, depending on the law applicable to the court in question. The purpose of this provision is to place the courts in the same position that they were in on June 26, 1981, the date of the *McCarty* decision, with respect to treatment of non-disability military retired or retainer pay. The provision is intended to remove the federal pre-emption found to exist by the United States Supreme Court and permit State and other courts of competent jurisdiction to apply pertinent State or other laws in determining whether military retired or retainer pay should be divisable. Nothing in this provision requires any division; it leaves that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution. This power is returned to the courts retroactive to June 26, 1981. *This retroactive application will at least afford individuals who were divorced (or had decrees modified) during the interim period between June 26, 1981 and the effective date of this legislation the opportunity to return to the courts to take advantage of this provision.*

*Id.* at 16, 1982 U.S.Code Cong. & Ad.News 1611 (emphasis added).

■ Appellant cites us to the House Conference Report which addresses, *inter alia,* the retroactivity of the Act and its application to divorce decrees finalized prior to the *McCarty* decision.

> In additions [sic], the conferees intend this provision to preclude recognition of changes to court orders finalized before the *McCarty* decision if those changes are effected after the *McCarty* decision and as a direct result of the enactment of the new title X of this conference report.

In other words, the courts should not favorably consider applications based on the enactment of this title to reopen cases *finalized before* the *McCarty* decision wherein military retired pay was not divided.

H.Conf.Rep. 749, 97th Cong., 2d Sess. 168, *reprinted in* 1982 U.S.Code Cong. & Ad. News 1569, 1573. Appellant claims this language indicates that Congress did not intend for former spouses to reopen cases to effect some kind of division of retirement benefits pursuant to the Act. Appellant is misapplying this language to his case as his case was not finalized before the *McCarty* decision, thereby taking it out of the category of cases contemplated by the House in its conference report. The Supreme Court of Texas stated: "No final adjudication regarding Jack Trahan's military retirement benefits, therefore, has or will be made until this Court renders its opinion." *Trahan v. Trahan*, 626 S.W.2d 485, 488 (Tex.1981). This opinion was handed down five months after the United States Supreme Court announced its decision in *McCarty*. Finally, although the House and Senate reports speak to divorce decrees rather than partition suits, the Act should be applied in the present case because there would be no cause of action to partition appellant's retirement benefits but for the divorce.

## TEXAS LAW

Military retirement benefits as early as 1960 were considered community property subject to division upon divorce by Texas courts. *Kirkham v. Kirkham*, 335 S.W.2d 393 (Tex.Civ.App.1960, no writ); *Busby v. Busby*, 457 S.W.2d 551 (Tex.1970); *Taggart v. Taggart*, 552 S.W.2d 422 (Tex.1977); *Clearley v. Clearley*, 544 S.W.2d 661 (Tex. 1976). The Supreme Court of Texas has also held that *McCarty* is to apply only prospectively; that is, any judgment dividing military retirement pay which became final prior to the date *McCarty* was announced (June 26, 1981) would stand. *Segrest v. Segrest*, 649 S.W.2d 610 (Tex.1983). It is equally clear that any judgment of divorce or partition entered after February

1, 1983, the effective date of the Act, awarding a spouse an interest in retirement benefits would also stand. The problem in this case involves a former spouse who had the misfortune of having a final judgment entered after June 26, 1981, the date *McCarty* was handed down, and before February 1, 1983, the effective date of the Act. This "gap problem" was addressed by the California Court of Appeals in *In Re Marriage of Hopkins*, 142 Cal.App.3d 350, 191 Cal.Rptr. 70 (1983).

> Not to apply the Act retroactive to June 25, 1981, would yield far more problems than would any mechanical application of a calendar-determining set of laws. To allow cases decided, but not yet final, either before or during the relatively short interval of *McCarty* to be subject to the *McCarty* rule would carve out of the many persons entitled to military pensions a fortunate or unfortunate few who had substantial rights determined by the vagaries of the calendar. It would create a gap of some 20 months in which their future entitlements were or were not to be determined in a manner different from the 40 years before or the indefinite future after. Most importantly, it would allow the happenstance of the calendar to thwart the meaning of Congress when the Congress did quickly and affirmatively act to clearly and fully make these pension rights subject to the state's control. Indeed, not to apply the Act retroactively would be to thwart the very title of the Act, the "Uniformed Services Former Spouses' Protection Act."

*Id.* 191 Cal.Rptr. at 77.

We also find the following excerpt from *Smith v. Smith*, 458 A.2d 711 (Del.Fam.Ct. 1983) persuasive:

> It appears rather clear that Congress, in passing the Act, intended to obliterate the adverse effect of McCarty upon the divorced spouse of military personnel by making it retroactive to the date of that decision. The Committee Report which accompanied the bill (copy attached) states at p. 1:

"The primary purpose of the bill is to remove the effect of the United States Supreme Court decision in *McCarty v. McCarty,* 458 [453] U.S. 210 [101 S.Ct. 2728, 69 L.Ed.2d 589] (1981). The bill would accomplish their objective by permitting Federal, State, and certain other courts, consistent with the appropriate laws, to once again consider military retired pay when fixing the property rights between the parties to a divorce, dissolution, annulment or legal separation."

And Congress clearly felt that spouses aggrieved as a result of *McCarty* should have a chance to rectify the situation when the Report stated at p. 5:

"Former spouses divorced in the interim period between the *McCarty* decision and the effective date of this law *will have the opportunity to return to court to have their decrees modified* in light of this legislation." (Emphasis added)

When Report used the words "divorced in the interim period", I think it clear that the author had in mind a property decree which formed a part of the divorce decree itself and did not intend to turn away a spouse whose divorce occurred prior to *McCarty* but whose property decree came afterward. In short, I believe the Report intended to refer to the date of the decree disposing of property and not necessarily the divorce decree only. The statute itself does not refer to a "divorce" decree but only to "court order" which is defined by the Act itself in § 1408(a)(2) to include a "final decree of divorce, dissolution, annulment or legal separation issued by a court, *or a court ordered, ratified or approved property settlement incident to such a decree ....*" (Emphasis added)

Obviously, even though Congress clearly seemed to leave the door open for modification of post-*McCarty* property decree, Congress cannot compel state courts to afford that opportunity .... Indeed they rather clearly stated that courts should have the freedom to undo any harm created by the *McCarty* precedent

by removing it retroactively. The Act is really a legislative reversal or vacation of *McCarty* ....

Should the Court, therefore, in view of the Act and the congressional intent referred to above reopen the case to consider an amendment to the Order of November 30, 1981 to include the Husband's military pension as specific property subject to division? It is my considered judgment that it would be inequitable not to reopen.

*Id.* at 713–14.

■ The doctrine of *res judicata* should not apply in this case. Applying the doctrine of *res judicata* would subvert the intent of Congress and the plain meaning of the Act which is to restore state law to what it was prior to the *McCarty* decision. "The judgment in [the prior] case was res adjudicata only of the issue then presented of the facts as they then appeared *and of the legislation then existing." State v. Powell,* 63 Tex.Civ.App. 405, 134 S.W. 746, 748 (1910, writ ref'd), quoting *Utter v. Franklin,* 172 U.S. 416, 19 S.Ct. 183, 43 L.Ed. 498 (1899) (emphasis added). *See also United States v. Sioux Nation of Indians,* 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980). Given the subsequent legislation passed by Congress since *McCarty* was handed down, we hold that *res judicata* does not bar appellee from bringing this action and, accordingly, overrule appellant's points of error.

■ Appellant also claims that the trial court's judgment is an unconstitutional garnishment of his wages. We do not agree. "Garnishment is a statutory proceeding whereby the property, money, or credits of one person in the possession of, or owing by another are applied to the payment of the debt of a debtor by means of proper statutory process issued against the debtor and the garnishee." *Beggs v. Fite,* 130 Tex. 46, 106 S.W.2d 1039, 1042 (1937). The judgment in the present case involves no third party. It merely directs appellant to pay a certain percentage of his retirement benefits to appellee.

We will overrule appellee's cross-point of error seeking division of appellant's retirement benefits from April 30, 1965. The judgment of the trial court awarding appellee 38.96% of appellant's military retirement benefits from June 25, 1981, is affirmed.