William J. O'CONNOR, Appellant,

v.

Emorphia P. O'CONNOR, Appellee.

No. 04–84–00039–CV.

Court of Appeals of Texas,
San Antonio.

May 22, 1985.

Rehearing Denied June 17, 1985.

Edward M. Lavin, San Antonio, for appellant.

John U. Hemmi, Kirk Patterson, Stewart, Hemmi & Pennypacker, San Antonio, for appellee.

Before BUTTS, CANTU and REEVES, JJ.

## OPINION

BUTTS, Justice.

William O'Connor appeals from a partition of his military retirement benefits. Trial was before the court, which awarded his ex-wife Emorphia O'Connor 34% of all William's future military retirement benefits, and arrearage in the amount of $11,-773.41 for her share of payments received by him from September 11, 1981 (date of the divorce) through October 25, 1983 (date of judgment in partition suit).

■ This is one of the "gap" cases, decided between *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), June 26, 1981, and the effective date of the Uniformed Services' Former Spouses' Protection Act, 10 U.S.C. § 1408 (1983), February 1, 1983. The couple were married 179 months of the total 264 months that William served in the Air Force. Prior to *McCarty, supra,* Texas law designated military retirement benefits earned during marriage as community property subject to division upon divorce. *Taggart v. Taggart,* 552 S.W.2d 422, 424 (Tex.1977); *Cearley v. Cearley,* 544 S.W.2d 661, 665 (Tex.1976);

*Busby v. Busby,* 457 S.W.2d 551, 554 (Tex. 1970). The formula for division of military retirement benefits between spouses is stated in *Cearley, supra,* at 664:

$$\frac{\text{MONTHS MARRIED}}{\text{MONTHS IN SERVICES}} \times \text{FINAL BENEFIT} \times \frac{1}{2}$$

Therefore, under the present and pre-McCarty formula Emorphia would be entitled to 34% of William's military retirement benefits.

Until Congress enacted the FSPA, *McCarty* mandated that military retirement benefits were the separate property of the retiree and not subject to community property division upon divorce between the retiree and his ex-spouse. 453 U.S. at 233, 101 S.Ct. at 2741, 69 L.Ed.2d at 606.

■ The FSPA in § 1408(c)(1) reinstates Texas law as it existed prior to the *McCarty* decision both before and after June 25, 1981:

> (c)(1) Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

*See Cameron v. Cameron,* 641 S.W.2d 210, 212 (Tex.1982); *see also Trahan v. Trahan,* 682 S.W.2d 332, 334 (Tex.App.—Austin 1984, ref'd n.r.e.); *Southern v. Glenn,* 677 S.W.2d 576, 580 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.); *Voronin v. Voronin,* 662 S.W.2d 102, 104 (Tex.App.—Austin 1983, writ dism'd); *Gordon v. Gordon,* 659 S.W.2d 475, 477 (Tex.App.—Corpus Christi 1983, no writ).

Courts of Appeals have recently faced several of these so-called "gap" cases. The decision to partition military retirement benefits tends to turn on (1) whether the divorce decree is a final judgment, i.e., the partition suit is a direct or collateral attack upon a divorce decree; and (2) when the divorce decree is a final judgment, whether it is silent or explicit as to the division of military retirement benefits.

Where the judgment of the trial court is not final and appellant is therefore directly attacking a divorce decree by means of appeal, courts of appeal have generally held that the trial court may reconsider a division of military retirement benefits. *Patino v. Patino,* 687 S.W.2d 799 (Tex. App.—San Antonio, 1985); *Voronin v. Voronin, supra; Gordon v. Gordon, supra.*

But where the judgment of the trial court is final and appellant is therefore collaterally attacking a divorce decree by means of a partition suit, courts of appeals' decisions tend to turn on whether the divorce decree expressly assigns any military retirement benefits. However, with no specific designation in the judgment, the courts direct that division of military retirement benefits should be considered. *Compare Harrell v. Harrell,* 684 S.W.2d 118, 123–24 (Tex.App.—Corpus Christi 1984, no writ) (*bill of review* proper remedy in that case to redetermine property division) *with Trahan v. Trahan, supra* (*partition* of military retirement benefits proper remedy) and *Harkrider v. Morales,* 686 S.W.2d 712, 715 (Tex.App.—San Antonio 1985, no writ) (partition proper remedy).

On the other hand, in one case the majority opinion decreed that where the divorce expressly awards military retirement benefits, res judicata defeats the claim of the spouse requesting partition. *Breen v. Breen,* 693 S.W.2d 495 (Tex.App.—San Antonio 1985). The dissent urged that since military retirement benefits were not subject to partition during the "McCarty-era" divorce, the court could reconsider the division as community property. *See also* Sampson, *McCarty Era Divorces—Unscrambling the Omelet,* 48 TEX.B.J. 293 (1985) (proposed statutory amendment to Family Code for modification of divorce decrees in "gap" cases); *Smith v. Smith,* 458 A.2d 711, 714–15 (Del.Fam.Ct.1983) (partition suit should reconsider division of husband's military pension awarded to him in "McCarty-era" divorce case).

In the case at bar, the pertinent provisions of the McCarty-era agreed divorce decree are:

Respondent, WILLIAM J. O'CONNOR, shall receive and is hereby awarded as his sole and separate property, free from any claim of Petitioner, EMORPHIA P. O'CONNOR, the following:

\* \* \* \* \* \*

4. All checking accounts, savings accounts, insurance policies, *retirement benefits* and other personal property in his name or possession.

\* \* \* \* \* \*

All relief not specifically granted, is hereby DENIED. *The Court finds that it has no jurisdiction of the retirement benefits earned by the respondent, WILLIAM J. O'CONNOR, by virtue of his service with the United States Air Forces and makes no disposition of any of such benefits.* [Emphasis ours.]

The trial court, in its finding of facts in this partition suit, found that the divorce decree was not ambiguous. In point of error two, William challenges that finding.

■ An agreed judgment is accorded the same degree of finality and binding force as a final judgment rendered at the conclusion of the adversary proceeding. *McCray v. McCray*, 584 S.W.2d 279, 281 (Tex.1979); such a judgment is construed in the nature of a contract, and in the construction of an agreed judgment the rules relating to contracts in general will apply. *Edwards v. Gifford*, 137 Tex. 559, 155 S.W.2d 786, 787 (1941). It is a well established rule of construction that the specific language of an instrument controls over its general terms. *Parker v. Delcoure*, 455 S.W.2d 339, 344 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n.r.e.).

■ We find that the specific language of the latter paragraph [that the trial court has no jurisdiction of the retirement benefits earned by virtue of William's service with the United States Air Force and makes no disposition of any of such benefits] controls over the general language of an earlier paragraph listing and awarding miscellaneous items to William including "retirement benefits." We agree the divorce decree is not ambiguous. Therefore,

we cannot consider any extrinsic evidence, including William's bill of exception offered to show that Emorphia obtained more of the community property because she was unable to obtain a share of military retirement benefits. Point of error two is overruled.

■ In point of error one, William argues that the trial court had no authority (jurisdiction) to partition military retirement benefits. We find that the trial court had jurisdiction both under the specific language of the FSPA and under Texas' interpretation of that language. *See* 10 U.S.C. § 1408(c)(1), *supra.* In *Cameron v. Cameron, supra,* the Texas Supreme court construed this statute to mean that the purpose of the FSPA is to reverse the effect of the *McCarty* decision. *See also Voronin, supra; Gordon, supra; Southern, supra.* Point of error one is overruled.

In point of error three, William argues that the trial court's award of arrearage to Emorphia was an unconstitutional retroactive law. We do not agree.

■ Having determined the court to be correct in ordering a formulary partition of future military retirement benefits, we find that the wife is entitled to the arrearage from September 11, 1981. *See Cameron v. Cameron, supra,* at 213 (in direct attack, wife awarded percentage share of military retirement benefits from June 25, 1981); *Trahan, supra* at 338 (in collateral attack, same).

Accordingly, the judgment is affirmed.

CANTU, Justice, dissenting.

I do not agree that the divorce decree is unambiguous. Clearly the various provisions cause the decree to be susceptible of conflicting interpretations. Surely the position advanced by the appellant is as equally supported by the language of the decree as is appellee's contention.

Because the decree is in the nature of an agreed judgment, it must be interpreted as if it were a contract between the parties and the interpretation thereof is governed

by the laws relating to contracts. *Ex parte Jones,* 163 Tex. 513, 358 S.W.2d 370, 375 (1962).

The intention expressed on the face of the decree is doubtful and in my opinion will support either position. Because the contract must be construed so as to give effect to the intention of the parties, resort should have been had to parol evidence of the situation and the surroundings of the parties to resolve the doubt. *Gardner v. Watson,* 76 Tex. 25, 13 S.W. 39, 40 (1890); *La Brie v. McKim,* 56 Tex.Civ.App. 322, 120 S.W. 1083 (1909, no writ).

While the construction placed upon the decree by the trial court is certainly capable of being a correct one, I would hold that the trial court was not justified in construing the decree as an unambiguous instrument and that it erred in failing to permit parol evidence offered by appellant in support of his interpretation and as evidence of the intent of the parties. I would reverse and remand.