TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-93-00607-CV







Emma J. Trahan, Appellant



v.



Jack F. Trahan, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 344,539, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING








 Jack F. Trahan sued Emma Trahan, his former wife, for declaratory judgment that
a 1983 final judgment, partitioning between them Jack's right to military retired pay, had become
invalid and unenforceable because of a subsequent, retroactive amendment to the Uniformed
Services Former Spouses' Protection Act, 10 U.S.C.A. § 1408(c)(1) (West 1983 & Supp. 1994). 
The trial court awarded him declaratory relief to that effect. Emma appeals. We will reverse the
trial-court judgment and render judgment that the 1983 judgment is a final, valid, subsisting, and
enforceable judgment. 



THE CONTROVERSY


 Emma and Jack were married from September 1943 until their first divorce on
January 22, 1963. They remarried on October 28, 1970, and were again divorced on May 7,
1971. Neither divorce decree disposed of Jack's right to military retired pay. On February 14, 1977, Emma filed a partition action in which the district court concluded that 77.92% of Jack's
right to retired pay was community property which should have been divided at divorce. The
court partitioned the right to retired pay. This trial-court judgment was affirmed in part and
modified in part in Trahan v. Trahan, 609 S.W.2d 820 (Tex. Civ. App.--Texarkana 1980), rev'd,
626 S.W.2d 485 (Tex. 1981). Jack filed an application for writ of error to the Supreme Court
of Texas. While the application was pending, the United States Supreme Court decided the case
of McCarty v. McCarty, 453 U.S. 210 (1981), which held that federal law precluded a state
court's partition of military non-disability retired pay pursuant to state community property laws. 
Following McCarty, the Texas Supreme Court reversed the judgment of the court of appeals and
rendered judgment for Jack. Trahan v. Trahan, 626 S.W.2d 485 (Tex. 1981).

 On September 8, 1982, Congress enacted 10 U.S.C.A. § 1408, the Uniformed
Services Former Spouses' Protection Act ("USFSPA"). The statute effectively nullified the
McCarty decision and allowed states to apply their own community property laws as they had
done before McCarty. (1) 

 On February 10, 1983, Emma again filed a suit to partition Jack's pension benefits. 
The 200th District Court of Travis County, in cause number 344,539, awarded Emma 38.96%
of Jack's retired pay from June 25, 1981. This judgment was appealed and affirmed in Trahan
v. Trahan, 682 S.W.2d 332 (Tex. App.--Austin 1984, writ ref'd n.r.e.), cert. denied, 475 U.S.
1002 (1986) (appeal dismissed for want of a substantial federal question). 

 On November 5, 1990 Congress amended the USFSPA ("1990 amendment"),
resulting in the instant dispute. The portion of the amendment in controversy reads as follows:



(c)(1). . . A court may not treat retired pay as property in any proceeding to divide
or partition any amount of retired pay of a member as the property of the member
and the member's spouse or former spouse if a final decree of divorce, dissolution,
annulment, or legal separation (including a court ordered, ratified, or approved
property settlement incident to such decree) affecting the member and the
member's spouse or former spouse (A) was issued before June 25, 1981, and (B)
did not treat (or reserve jurisdiction to treat) any amount of retired pay of the
member as property of the member and the member's spouse or former spouse.



10 U.S.C.A. § 1408 (c)(1)(West Supp. 1994). The effective date section of the 1990 


amendment states: 



The amendment made by subsection (a) [amending subsection (c)(1) of section
1408] shall apply with respect to judgments issued before, on, or after the date of
the enactment of this Act [Nov. 5, 1990]. In the case of a judgment issued before
the date of the enactment of this Act, such amendment shall not relieve any
obligation, otherwise valid, to make a payment that is due to be made before the
end of the two-year period beginning on the date of the enactment of this Act
[Nov. 5, 1990].



Pub. L. No. 101-510, § 555(e), 104 Stat. 1569, 1570 (1990), amended by Pub. L. No. 102-190,
§ 1062(a)(1), 105 Stat. 1475 (1991). 

 Based on the 1990 amendment, the trial court nullified the 1983 judgment affirming
the partition of Jack's military retirement benefits and enjoined any payments after November 5,
1992. Emma brings four points of error.



HOLDINGS AND DISCUSSION


 In her first two points of error, Emma complains (1) the trial court erred in failing
to hold that res judicata barred reopening the 1983 judgment regardless of the 1990 amendment,
and (2) the trial court's retroactive application of the 1990 amendment to a valid judgment of a
Texas court is unconstitutional under the due process clause of the United States Constitution. 
In essence, Emma argues she obtained a vested property right under the 1983 partition judgment,
which right could not later be confiscated without compensation. Jack responds by citing the
congressional intent behind enactment of the 1990 amendment and concludes that res judicata and
the prohibition against retrospective laws do not apply in this case because a service member's
right to military retired pay never vests. 



Congressional Intent


 Despite several decisions to the contrary, (2) it is now apparent that the original
USFSPA, as enacted in 1982, (3) was not intended to apply retroactively. See John B. McKnight,
Closing the McCarty-USFSPA Window: A Proposal for Relief from McCarty-Era Final Judgments,
63 Tex. L. Rev. 497, 512 (1984). (4) In first enacting the USFSPA, Congress did not intend for
courts to allow the reopening of divorce cases that had become final before the McCarty decision. 
Redus v. Redus, 852 S.W.2d 94, 96 (Tex. App.--Austin 1993, writ denied). The legislative history
reveals:



The committee is concerned because some state courts have been less than faithful
in their adherence to the spirit of the law [USFSPA]. The reopening of divorce
cases finalized before the Supreme Court's decision in McCarty v. McCarty that
did not divide retired pay continues to be a significant problem. Years after final
divorce decrees have been issued, some state courts . . . have reopened cases
(through partition actions or otherwise) to award a share of retired pay. Although
Congress has twice stated in report language that this result was not intended, the
practice continues unabated. Such action is inconsistent with the notion that a final
decree of divorce represents a final disposition of the marital estate. 


 

H.R. Rep. No. 665, 101st Cong., 2d Sess. 279, reprinted in 1990 U.S.C.C.A.N. 2931, 3005.

 The legislative intent behind the original enactment of the USFSPA and cases
examining the doctrine of res judicata as it applied to the 1983 version of the USFSPA, however,
are not dispositive of whether the express statutory language in the 1990 amendment, giving rise
to retroactive application, displaces the doctrine of res judicata. Before the 1990 amendment, the
USFSPA did not contain any language mandating retroactive application.

 In enacting the 1990 amendment, the intent of Congress to cure an unintended
interpretation of the USFSPA by the courts is abundantly clear. "The amendment . . . shall apply
. . . to judgments issued before, on, or after the date of the enactment of this Act." Pub. L. No.
101-510, § 555(e), 104 Stat. 1569, 1570 (1990), amended by Pub. L. No. 102-190, § 1062(a)(1),
105 Stat. 1475 (1991) (emphasis added). The last sentence of the effective date paragraph is also
inescapably retroactive and mandatory. "[J]udgment[s] issued before the date of the enactment
. . . shall not relieve any obligation, otherwise valid, to make a payment that is due to be made
before the end of the two-year period beginning on the date of the enactment of this Act." Id.
(emphasis added). The intent evident in this paragraph is that section 1408(c)(1) applies to final
judgments issued before the 1990 USFSPA amendment and suspends any further payment to be
made pursuant to a final judgment after November 5, 1992, two years after the enactment of the
amendment. 

 Furthermore, the Code of Federal Regulations reinforces the assertion that the
amendment was intended to affect valid court judgments. 



A modification on or after June 26, 1981, of a court order that originally awarded
a division of retired pay as property before June 26, 1981, may be honored for
subsequent court-ordered changes made for clarification, such as the interpretation
of a computation formula in the original court order. For court orders issued
before June 26, 1981, subsequent amendments after that date to provide for a
division of retired pay as property are unenforceable . . . . 



32 C.F.R. § 63.6(7) (1993) (emphasis added).



Res Judicata


 We must now determine whether the amendment to the USFSPA preempts
application of the Texas common law doctrine of res judicata. The supremacy clause of the U.S.
Constitution orders that a congressional enactment preempts all inconsistent state legislation if
conflicts exist between state and federal law. U.S. Const. art. VI, cl. 2. See generally, Richard
P. Shafer, Federal Pre-emption of State Authority Over Domestic Relations-Federal Cases, 70
L.Ed. 2d 895, 897 (1983). The field of domestic relations is generally a matter of state law, and
the United States Supreme Court has consistently recognized that when Congress passes general
legislation, it rarely intends to displace state law in that particular area. Mansell v. Mansell, 490
U.S. 581 (1989) (citing Rose v. Rose, 481 U.S. 619, 628 (1987) and Hisquierdo v. Hisquierdo,
439 U.S. 572, 581 (1979)). Federal law will only preempt state law in the area of domestic
relations "where enforcement of state law will cause major damage to clear and substantial federal
interests." Shafer, supra, at 897. 

 Whether federal law preempts state community property laws is quite a different
question from whether the USFSPA preempts the common law doctrine of res judicata. The
Supreme Court in Mansell, after examining the legislative intent of the USFSPA and the precise
language of the Act, addressed the issue of federal preemption of state community property laws
while noting expressly that it had no jurisdiction to decide whether the doctrine of res judicata
should have barred the reopening of pre-McCarty settlements since that was a matter of state law. 
Mansell, 490 U.S. at 586 n.5. The Supreme Court of Texas, in Berry v. Berry, 786 S.W.2d 672
(Tex. 1990), followed the Mansell opinion. In Berry, the court reversed a court of appeals
decision that retroactively applied a federal law, rendering a Texas divorce decree unenforceable. 
The subsequent enactment of the USFSPA cannot be used to attack collaterally a final divorce
decree. Berry, 786 S.W.2d at 673. If the court rendering the partition judgment had jurisdiction
over the parties and the subject matter of the suit, the court's judgment is not void, but only
voidable. A final divorce decree thus may not be collaterally attacked even if it is later found to
be erroneous or voidable. Id.; Humble Oil & Refining Co. v. Fisher, 253 S.W.2d 656, 661 (Tex.
1952); see also Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). If a final
judgment is voidable as opposed to void, the doctrine of res judicata applies. Segrest, 649 S.W.2d
at 613 (Tex. 1983). 

 There are instances where, under the supremacy clause, a state divorce decree must
give way to clearly conflicting federal enactments. See Ridgway v. Ridgway, 454 U.S. 46 (1981). 
In Ridgway, the court found that provisions of the Servicemen's Group Life Insurance Act of
1965, giving an insured service member the right to freely designate and alter the beneficiaries
named under the contract, prevail over and displace a constructive trust for the benefit of the
service member's children imposed upon the policy proceeds by a state-court divorce decree. Id.
at 54-60. However, the court clearly distinguished the Ridgway situation, where the service
member possessed an absolute individual right to designate the policy beneficiary, from the
situation in which community property was at stake. In Ridgway, the service member would not
have been able to "impose[] his will upon property in which his wife had a distinct vested
community property interest." Id. at 59-60. 

 Few Texas cases specifically address the retroactive effect of the 1990 amendment
and the doctrine of res judicata. See Sutherland v. Cobern, 843 S.W.2d 127 (Tex.
App.--Texarkana 1992, writ denied); Knowles v. Knowles, 811 S.W.2d 709 (Tex. App.--Tyler
1991, no writ). In Sutherland, the court addressed the issue of whether the 1990 amendment
barred a subsequent reopening of litigation. In that case, the court determined that since the
original pre-McCarty divorce decree classified the serviceman's retired pay as a divisible
community asset, the USFSPA, as amended, did not preclude a post-USFSPA partition suit. 
Sutherland 843 S.W.2d at 130. The court never addressed the issue of res judicata, however,
because the court concluded that the service member was estopped from asserting the issue. In
Knowles, the court affirmed a trial-court judgment denying the partition of military retired pay
that had already been disposed of in a final divorce decree. Knowles, 811 S.W.2d at 716. The
application of the 1990 amendment, however, was wholly consistent with the doctrine of res
judicata.



Vested Rights


 Whether the doctrine of res judicata controls is dependent on whether Emma had
a vested right (5) in the retired pay pursuant to the partition action.

 The Texas constitution prohibits retroactive laws. (6) Tex. Const. art. I, § 16. A
statute is retroactive, and thus prohibited, if it impairs vested rights acquired under existing laws. 
International Sec. Life Ins. Co. v. Maas, 458 S.W.2d 484, 490 (Tex. Civ. App.--Houston [1st
Dist.] 1970, writ ref'd n.r.e.). Generally, retroactive laws are regarded with disfavor. Deacon
v. City of Euless, 405 S.W.2d 59, 61 (Tex. 1966). A statute is presumed to be prospective unless
it is clear from a fair reading of the statute that the legislature intended it to apply to both past and
present controversies. Ex Parte Abell, 613 S.W.2d 255, 258 (Tex. 1981); Coastal Indust. Water
Auth. v. Trinity Portland Cement Div., Gen. Portland Cement Co., 563 S.W.2d 916, 918 (Tex.
1978); State v. Humble Oil & Ref. Co., 169 S.W.2d 707 (Tex. 1943). 

 Private rights of parties which have become vested under a judgment cannot be
taken away without compensation by a subsequent legislative act. Inman v. Railroad Comm'n,
478 S.W.2d 124, 128 (Tex. Civ. App.--Austin 1972, writ ref'd n.r.e.); Jenckes v. Mercantile Nat'l
Bank, 407 S.W.2d 260 (Tex. Civ. App.--Dallas 1966, writ ref'd n.r.e.). A final judgment settles
all rights adjudicated between the parties and the substantive rights vindicated therein are vested
rights. Arnold v. City of Sherman, 244 S.W.2d 880, 883 (Tex. Civ. App.--Dallas 1951, writ
ref'd).

 Jack cites Brannon v. Randmaa, 736 S.W.2d 175 (Tex. App.--Austin 1987, writ
denied), cert. denied, 486 U.S. 1019 (1988), for the proposition that because military retirement
pensions are gratuities allocated by Congress and can be altered by Congress, a service member's
right to retired pay never vests. Therefore, if Jack does not have a vested right in his military
retired pay, a fortiori, Emma cannot possess a vested right to any part of such pay. The Brannon
decision is distinguishable from the present cause because in Brannon there was no final judgment
involving a division of military retired pay. The service member in Brannon, who was divorced
in 1977, argued that he had a vested right in his retired pay pursuant to the 1981 McCarty
decision, which right could not be taken away by the subsequent federal enactment of the
USFSPA. Id. at 176. The service member's right to retired pay was not adjudicated in his favor. 
He had attempted to freeze the law at the particular time the law favored him. The court
determined that the service member "never acquired a vested, permanent right to sole enjoyment
of his retirement benefits before Congress enacted the USFSPA." Id. at 178 (emphasis added). 


 The court further stated: "It is true that the effect of the opinion in McCarty was
to delcare [sic] the benefits to be solely [the service member's], but the Supreme Court just as
certainly could not vest in [the service member] for all time the uninterrupted right to those
benefits." Id. at 178. Rather obviously, the Brannon court used the word "vested" in the sense
that the court was powerless to give the right a permanence that Congress had not given it. In
addition, the Brannon court reaffirmed that military retired pay is subject to division upon divorce
as a vested community property right even if the present right to the pay had not fully matured. 
Id. at 177 (citing Cearley v. Cearley, 544 S.W.2d 661 (Tex. 1976)); see also Taggart v. Taggart,
552 S.W.2d 422 (Tex. 1977). 



CONCLUSION


 The 1983 trial-court judgment, affirmed by this court in 1984, awarded Emma the
legal right to 38.96 percent of Jack's right to retired pay from September 30. With our decision
in that case, her right vested. Res judicata barred re-opening the issue of whether she possessed
such a right. Any subsequent amendment of USFSPA did not destroy that right. We hold
accordingly and conclude that the trial court erred in its declaratory judgment. We therefore
sustain Emma's first two points of error, reverse the trial-court judgment, and render judgment
that the 1983 judgment of the 200th District Court of Travis County, Texas, in cause number 344,
539, styled Emma J. Trahan vs. Jack F. Trahan, is a valid, subsisting and enforceable judgment. 


 Owing to our holdings and orders above, we need not reach Emma's third and
fourth points of error. 


 

 John Powers, Justice

Before Justices Powers, Jones and B. A. Smith

Reversed and Rendered

Filed: March 8, 1995 

Publish
1.   As enacted in 1983, § 1408(c)(1) of the USFSPA provided:


Subject to the limitations of this section, a court may treat disposable retired or
retainer pay payable to a member for pay periods beginning after June 25, 1981
[date of the McCarty decision], either as property solely of the member or as
property of the member and his spouse in accordance with the law of the
jurisdiction of such court. 


10 U.S.C.A. § 1408(c)(1) (effective Feb. 1, 1983).
2.   Cases permitting retroactive application include: Trahan v. Trahan, 682 S.W.2d 332
(Tex. App.--Austin 1984, writ ref'd n.r.e.) (res judicata only applies to legislation then
existing), cert. denied, 475 U.S. 1002 (1986) (dismissed for want of a substantial federal
question) (citing State v. Powell, 134 S.W. 746 (Tex. Civ. App. 1910, writ ref'd)); Powell v.
Powell, 703 S.W.2d 434 (Tex. App.--Waco 1985, writ ref'd n.r.e.) (enactment of USFSPA
created a change in law and suit not barred by res judicata), cert. dism'd, 476 U.S. 1180
(1986) (dismissed for want of a substantial federal question). See also Marino v. State Farm
Fire & Cas. Ins. Co., 787 S.W.2d 948, 950 (Tex. 1990) ("[R]es judicata is not a defense in a
subsequent action if there has been a change in the material facts, the applicable statutory law,
or the decisional law between the first judgment and the second suit."). However, these cases
did not reflect the majority view. See Segrest v. Segrest, 649 S.W.2d 610 (Tex. 1983)
(McCarty decision did not require retroactive application to divorce decrees finalized before
decision), cert. denied, 464 U.S. 894 (1983); Breen v. Breen, 693 S.W.2d 495 (Tex.
App.--San Antonio 1985, writ ref'd n.r.e.) (res judicata applied to bar collateral attack after
McCarty decision, but before USFSPA); Allison v. Allison, 690 S.W.2d 340 (Tex. App.--Fort
Worth 1985 (USFSPA was permissive and res judicata barred subsequent reopening of
litigation), writ ref'd n.r.e., 700 S.W.2d 914 (Tex. 1985). 
3.   The USFSPA was enacted on September 8, 1982 and became effective on February 1,
1983. 
4.   McKnight cites portions of the Conference Committee Report for the proposition that the
USFSPA was not intended to re-open final adjudication of divorce decrees. "[T]he courts
should not favorably consider applications based on the enactment of this title to reopen cases
finalized before the McCarty decision wherein military retired pay was not divided." H.R.
Rep. No. 749, 97th Cong., 2d Sess. 165, reprinted in 1982 U.S.C.C.A.N. 1569. 
5.   Courts often manipulate the concept of "vested rights." Some legal scholars describe the
term "vested right" as little more than a conclusion and assert that vested rights are only those
rights which the court decides should be protected. See Bryant Smith, Retroactive Laws and
Vested Rights, 5 Tex. L. Rev. 231 (1927); Bryant Smith, Retroactive Laws and Vested Rights
II, 6 Tex. L. Rev. 409 (1928); George D. Braden, The Constitution of the State of Texas: An
Annotated and Comparative Analysis 62 (1977).
6.   Article I, section 16 of the Texas constitution provides: "No bill of attainder, ex post
facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." 
Only three states have unqualified constitutional provisions prohibiting retroactive legislation:
Colorado, Tennessee, and Texas. Norman J. Singer, Statutes and Statutory Construction §
41.12 n.7 (5th ed. 1992).