Muriel Jean **COATES,**
**Appellant-Respondent,**

v.

James Edward **COATES,**
**Respondent-Appellant.**

**Nos. 12361, 12370.**

Missouri Court of Appeals,
Southern District,
Division One.

March 8, 1983.

Motion for Rehearing or to Transfer
Denied March 29, 1983.

Application to Transfer Denied
May 31, 1983.

Donald W. Jones, Calvin R. Holden, Jones, Keeter, Karchmer, Nelms, Sullivan & Kirby, Springfield, for appellant-respondent.

Lynn E. Heitman, Turner, Reid, Duncan & Loomer, P.C., Springfield, for respondent-appellant.

FLANIGAN, Presiding Judge.

Plaintiff Muriel Jean Coates filed an action for separate maintenance, (§ 452.130),[1] against her husband defendant James Edward Coates. Defendant filed a counterclaim for dissolution of marriage. The trial court, after hearing the evidence, entered a decree of legal separation, (§ 452.305, par. 2), awarded custody of a minor child to plaintiff, ordered defendant to pay plaintiff $300 per month as maintenance, (§ 452.-335), ordered defendant to pay $100 per month child support, (§ 452.340), ordered defendant to pay $1,000 of plaintiff's attorney fees and divided the marital property, (§ 452.330). Both parties have appealed.

On her appeal plaintiff asserts that the trial court erred in granting a decree of legal separation to defendant. Plaintiff also claims that the maintenance award and the award of attorney fees are inadequate. On his appeal defendant asserts that the trial court erred in treating a portion of defendant's military pension as marital property. Defendant also claims that the maintenance award and the award of attorney fees are excessive and that plaintiff was awarded a disproportionate share of the marital property.

Although this court has considered all of the contentions of the parties in the manner prescribed by Rule 73.01(c) as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), only three require discussion. They deal, respectively, with the jurisdiction of the trial court to grant relief on the counterclaim, the trial court's treatment of de-

fendant's military pension, and the trial court's division of the marital property.

■ Plaintiff's first point is that the trial court erred in granting a decree of legal separation pursuant to defendant's counterclaim[2] because defendant's counterclaim "should not have been permitted to preempt the jurisdiction of the court to grant separate maintenance under § 452.130." Relying on *Sharpe v. Sharpe*, 134 Mo.App. 278, 114 S.W. 584 (1908), plaintiff argues that the trial court lacked jurisdiction to entertain the counterclaim, and grant relief thereon, because "once a wife files a petition for separate maintenance, that is the only action which the court can rule upon."

In *Sharpe* a wife sued her husband for separate maintenance under § 452.130. The husband filed a "cross-bill" for divorce. The trial court, after hearing the evidence, dismissed the petition and granted defendant a divorce. The St. Louis Court of Appeals held that in a wife's action for separate maintenance, the only issues triable were whether the husband had abandoned her without cause and neglected or refused to support her and that the trial court had no jurisdiction to entertain the husband's "cross-bill." The court stated that the statute relating to counterclaims in ordinary civil actions had no application to an action filed by the wife under § 452.130.

This court believes that *Sharpe* was overruled, at least tacitly, in *State v. Bland*, 357 Mo. 634, 210 S.W.2d 31 (Mo. banc 1948), where the supreme court held that in a divorce action filed by the husband it was procedurally permissible for the wife to counterclaim for separate maintenance under § 452.130. It is true that in *Sharpe* the petition sought separate maintenance and the counterclaim sought divorce, while in *Bland* the petition sought divorce and the counterclaim sought separate maintenance. The court, however, in *Bland* said that

---

1. All references to statutes are to RSMo 1978, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

2. Defendant's counterclaim requested dissolution of the marriage. In her reply plaintiff

renewed her request for a decree of separate maintenance but prayed, alternatively, for a decree of legal separation rather than one of dissolution if the court found merit in the counterclaim.

*Sharpe* was the only case "bearing on the question here," the latter being the permissibility of the counterclaim. The supreme court said that *Sharpe* had been overruled to some extent by *Dorrance v. Dorrance,* 257 Mo. 317, 165 S.W. 783 (1914), which held that a counterclaim for separate maintenance in a divorce suit was not outside the trial court's jurisdiction of the subject matter and thus was waivable. In *Bland* the court also pointed out that while a divorce action is broader in scope than a separate maintenance action (because the former severs the marriage relation), "yet as to maintenance it is substantially the same." [3]

*Sharpe* was decided years before Missouri adopted the "new" Code of Civil Procedure in 1943. In *Bland,* at p. 35, the court said:

"Sec. 37 of the new Code of Civil Procedure [now Rule 55.06], on counterclaims, is very broad. It deals with the plaintiff's petition and reply and the defendant's answer. Counterclaims may be pleaded in all of these. They may be independent or alternative claims, and either party may join as many as he has, legal, equitable or both. If a wife can prosecute a separate maintenance suit concurrently with her own or her husband's divorce suit, as implied in the Nolker case, supra, and held in the Brown and Elliott cases, supra, surely she can plead it as a cross-claim in the husband's divorce suit."

The court also said, "Even under the old counterclaim statute, Sec. 929 [RS 1939], we question the soundness of the doctrine announced in the *Sharpe* case.... Undoubtedly the wife's claim would '[arise] out of the * * * transaction set forth' in the husband's divorce petition, or would be 'connected with the subject of the action.' "

Sec. 452.240 reads:

"The petition of a married woman for any of the purposes before mentioned may be filed and the case heard and determined in the circuit court, and the like process and proceedings shall be had as in other civil suits triable before circuit judges."

In *Bland* the court cited with approval *State v. White,* 239 Mo.App. 838, 201 S.W.2d 781, 783 (Mo.App.1947), which held that § 452.240 is applicable to actions for separate maintenance under § 452.130. The court, in *Bland,* at p. 36, said that § 452.240 "merely adopts the general practice in civil suits" and that there was "nothing to the contrary anywhere in the chapter" (containing § 452.130).

This court holds that defendant's counterclaim for dissolution of marriage was, at the very least, a permissive counterclaim. Rule 55.32(b). It is unnecessary to consider whether it was also a compulsory one. Rule 55.32(a). Plaintiff's first point has no merit.[4]

■ Defendant's first point is that the trial court erred in treating defendant's nondisability military pension as marital property and awarding a portion (25 percent) of the pension to plaintiff because "military nondisability retirement pay is not subject to division as marital property."

The instant judgment was entered on June 29, 1981. Defendant places his primary reliance on *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), which was decided June 26, 1981. In *McCarty* the court held that federal law precludes a state court from dividing military nondisability retirement pay pursuant to state community property laws.

Before *McCarty* Missouri courts held that "military retirement pay is marital property." *In re Marriage of Weaver,* 606 S.W.2d 243, 244 (Mo.App.1980). See also *Daffin v. Daffin,* 567 S.W.2d 672, 679[13] (Mo.App. 1978). Doubtless it was those authorities upon which the trial judge relied in treating defendant's military pension as marital

---

**3.** To similar effect see *Ellis v. Ellis,* 263 S.W.2d 849, 853 (Mo.1953).

**4.** This holding is consistent with the following dictum in *In re Marriage of E.A.W.,* 573 S.W.2d 689, 692 (Mo.App.1978): "[D]efendant could

310

property and in awarding 25 percent[5] of it to plaintiff.

In the wake of *McCarty* the eastern district of this court, in *Pruitt v. Pruitt*, 622 S.W.2d 767, 768–69 (Mo.App.1981), held that *McCarty* "prohibits the treatment of husband's retirement pay as marital property in Missouri.... This is true whether the pay is actually divided (as was the case in McCarty) or used as an offset to other marital property awarded to the other spouse.... In short we feel the analysis used in *McCarty* prohibits treatment of federal military nondisability retirement pay as marital property as well as community property."

On September 9, 1982, the President signed into law the "Uniformed Services Former Spouses' Protection Act," Pub.L. No. 97–252, 96 Stat. 730 (1982), which now appears in 10 U.S.C.A. § 1408, and will be referred to as "the Act." The Supreme Court of Texas has said: "The purpose of the act was to reverse the effect of the *McCarty* decision. Under the act, a divorce court may divide military retirement pay between the spouses in accordance with the law of the jurisdiction of the court. The act limits such division of retirement pay to periods beginning after June 25, 1981." *Cameron v. Cameron*, 641 S.W.2d 210, 212–13 (Tex.1982).

In *Cameron* the divorce decree was entered March 29, 1979, and awarded the wife "thirty-five percent of the gross present and future Military Retirement presently being received." The Supreme Court of Texas held that the wife was entitled to recover "that thirty-five percent, but not for the period from March 29, 1979, to June 25, 1981." The supreme court affirmed "that part of the trial court judgment awarding [the wife] thirty-five percent of the military retirement pay, but only for the period beginning after June 25, 1981."

Among the provisions of 10 U.S.C.A. § 1408 which are applicable here are the following:

"(a) In this section:

(1) 'Court' means

(A) any court of competent jurisdiction of any State...

(2) 'Court order' means a final decree of ... dissolution ... which—

(A) is issued in accordance with the laws of the jurisdiction of that court;

(B) provides for—

.    .    .    .    .

(iii) division of property (including a division of community property); and

(C) specifically provides for the payment of an amount, expressed in dollars or as a percentage of disposable retired or retainer pay, from the disposable retired or retainer pay of a member to the spouse or former spouse of that member.

(3) 'Final decree' means ... a decree from which timely appeal has been taken and such appeal has been finally decided under the laws applicable to such appeals.

(4) 'Disposable retired or retainer pay' means the total monthly retired or retainer pay to which a member is entitled (other than the retired pay of a member retired for disability under chapter 61 of this title) less amounts which—[six such "amounts" are specified].

.    .    .    .    .

(c)(1) Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

.    .    .    .    .

---

have cross claimed for dissolution in his answer to the petition for separate maintenance."

**5.** Actually the trial court, taking into consideration the fact that some of defendant's military service was rendered before the marriage, treated 25 percent of the total pension as non-marital property and awarded that portion to defendant. The trial court treated 75 percent of the pension as marital property and awarded ⅓ of that portion, equivalent to 25 percent of the total pension, to plaintiff.

(d)(1) After effective service on the Secretary concerned of a court order with respect to the payment of a portion of the retired or retainer pay of a member to the spouse or a former spouse of the member, the Secretary shall, subject to the limitations of this section, make payments to the spouse or former spouse in the amount of the disposable retired or retainer pay of the member specifically provided for in the court order....

.     .     .     .     .

(h) The Secretaries concerned shall prescribe uniform regulations for the administration of this section."

Among the "limitations" of § 1408 is a provision dealing with the situation where "the spouse or former spouse to whom payments are to be made ... was not married to the member for a period of 10 years or more during which the member performed at least 10 years of service...." § 1408(d)(2). Another limitation reads: "The total amount of the disposable retired or retainer pay of a member payable under subsection (d) may not exceed 50 percent of such disposable retired or retainer pay." § 1408(e)(1).

After the Act was enacted, this court afforded the parties the opportunity to file supplemental briefs dealing with its effect upon these appeals. The husband makes no claim that either of the foregoing limitations or any other limitation in the Act affords him relief from the trial court's treatment of his disposable retired pay.

The provisions of the Act, with respect to "effective dates and transition," include the following, 96 Stat. 737:

"Sec. 1006. (a) The amendments made by this title shall take effect on the first day of the first month [February 1, 1983] which begins more than one hundred and twenty days after the date of the enactment of this title.

(b) Subsection (d) of Section 1408 of title 10, United States Code, ... shall apply only with respect to payments of retired or retainer pay for periods beginning on or after the effective date of this title, but without regard to the date of any court order. However, in the case of a court order that became final before June 26, 1981, payments under such subsection may only be made in accordance with such order as in effect on such date and without regard to any subsequent modifications."

The parties devote their supplemental briefs to the issue of how § 1408, in light of the foregoing provisions with respect to its effective date, operates upon the instant order. The issue may not be free of difficulty, especially since the instant judgment was rendered on June 29, 1981, and these appeals are being decided after February 1, 1983. Although resolution of the issue may be a challenge, as a practical matter it would serve no purpose for this court to seek it.

The extent to which the impact of *McCarty* was eliminated by the Act is controlled by the Act itself which contains the provision requiring the "Secretaries concerned" to prescribe uniform regulations for its administration. Such regulations appear, in proposed form, in 48 Fed.Reg. 4004 (1983). A pertinent provision of the proposed rule is set forth below.[6]

6. "[7] Court orders awarding a division of retired pay as property that were issued prior to June 26, 1981, will be honored, if they otherwise satisfy the requirements and conditions specified in this part. A modification on or after June 26, 1981, of a court order that originally awarded a division of retired pay as property prior to June 26, 1981, may be enforce (sic) for subsequent court ordered changes made for clarification purposes, such as the interpretation of a computation formula in the original court order. For court orders issued prior to June 26, 1981, subsequent amendments after that date to provide for a division of retired pay as property are unenforceable under this Directive. All court orders awarding a division of retired pay as property issued on or after June 28 (sic), 1981, will be enforced, if they otherwise satisfy the requirements and conditions specified in this part.

■ The court order shall provide specifically for payment of a fixed amount expressed in United States dollars or payment as a fixed percentage of retired pay. Court orders specifying a percentage of retired pay will be construed as a percentage of disposable retired pay." 48 Fed.Reg. 4004, 4005–4006 (1983) (proposed rule).

It is clear that the judgment of the trial court intended to, and did, provide for the payment, to plaintiff, of 25 percent of the disposable retired pay of defendant. This court affirms the decree, including that portion. The "Secretary concerned" with making that payment will of course do so to the full extent and on the schedule authorized by the Act.[7]

Defendant's second point challenges the trial court's division of the marital property but the principal basis for that challenge is the defendant's assertion that the trial court erred in treating defendant's nondisability military pension as marital property. In view of the invalidity of that basis, and in view of this court's determination that other challenges on the division of marital property lack merit and do not warrant discussion, defendant's second point has no merit.

The other contentions of the parties have been reviewed in the manner prescribed by Rule 73.01 and are rejected. There was substantial evidence to support the judgment and it does not constitute an erroneous declaration or erroneous application of the law. *Royal v. Royal,* 617 S.W.2d 615, 617[1] (Mo.App.1981).

The judgment is affirmed.

GREENE, C.J., and TITUS, J., concur.

PREWITT, J., disqualified.

---

7. Another provision of the trial court's judgment dealt with an award of the "survivor benefits payable under defendant's pension plan." Neither appeal challenged that portion.