**A.M. SMITH, Petitioner,**

v.

**A. SMITH, Respondent.**

Family Court of Delaware, Kent County.

Submitted: Feb. 28, 1983.
Decided: March 14, 1983.

Clay T. Jester, Dover, for respondent.

Douglas B. Catts, Dover, for petitioner.

WAKEFIELD, Judge.

Pursuant to Superior Court Rule 60(b), Respondent-Wife (Wife) has moved to reopen this Court's decision of November 30, 1981 for the purpose of admitting additional evidence and for consideration of additional arguments with respect to the ancillary matters decided therein. Specifically, the Wife asks that the Court now treat the Husband's military pension as a marital asset in view of the recently-enacted Uniformed Services Former Spouses' Protection Law, Public Law 97–252 passed by Congress and signed by the President on September 8, 1982 and now codified in 10 U.S.C. § 1408 (herein "the Act"). That law "effectively overrules the narrow holding of *McCarty* [*McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981)] by declaring that, under certain conditions, state courts can order a division of military retired pay as part of a distribution of marital property incident to a divorce proceeding." 3 *Equitable Distribution Reporter* No. 4 (October, 1982) p. 37.

In this Court's decision of November 30, 1981, the Court, relying on *McCarty,* supra, held that, while it could consider the Husband's military pension in a general way in making allocations of property, it could not specifically allocate any share thereof to the Wife as a property right, but could consider the income from such pension in making awards of alimony and child support. On the basis of that holding the Court awarded to the Wife 60% of the marital assets (ex-

cluding the military pension), 50% of the Husband's future Post Office pension earned during marriage "if, as and when received", and $600 per month undifferentiated alimony and child support. Although the Court could not, because of *McCarty,* divide the military pension, the Court did admit expert testimony on the value thereof which, had it not been for *McCarty* and had that testimony been accepted by the Court, would have made the military pension by far the largest single asset of the marital estate. Indeed, even the most conservative value placed on the military pension by the same expert made it more valuable than *all* the other assets combined.

The Act, which took effect on February 1, 1983, specifically provides in Section (c)(1):

"... a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981 (date of *McCarty* decision), either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court."

Prior to *McCarty,* the law of Delaware as enunciated by the Delaware Supreme Court in *Robert C.S. v. Barbara J.S.,* Del.Supr., 434 A.2d 383 (1981) was that future pension rights were marital property subject to division in ancillary proceedings. The subsequent decision by this Court in *Landanarf v. Landanarf,* Del.Fam., 441 A.2d 641 (1981) and the November 30, 1981 decision in this case rested solely and exclusively on *McCarty* and, hence, since Congress has, in effect, rendered *McCarty* null and void by making the Act retroactive to the date of the *McCarty* decision, *Landanarf* should no longer be considered controlling Delaware law with respect to military pension and *Robert C.S.,* supra, should now be considered the controlling law for all future military pensions.

The issue presented by the instant motion as amended is whether the Court should now reopen a decision almost eighteen months old for the purpose of receiving additional evidence and/or arguments with respect to the military pension for the purpose of making an award to the Wife of a portion thereof.

Under 13 *Del.C.* § 1519(a)(3) a disposition relating to property may be modified only under "circumstances that would justify the opening or vacation of a judgment under the Rule of the Superior Court of this State." Superior Court Rule 60(b) provides, inter alia, for relief from a final judgment where "(5) ... a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment have prospective application; or (6) any other reason justifying relief from the operation of the judgment."

It appears rather clear that Congress, in passing the Act, intended to obliterate the adverse effect of McCarty upon the divorced spouse of military personnel by making it retroactive to the date of that decision. The Committee Report which accompanied the bill (copy attached) states at p. 1:

"The primary purpose of the bill is to remove the effect of the United States Supreme Court decision in *McCarty v. McCarty,* 458 [453] U.S. 210 [101 S.Ct. 2728, 69 L.Ed.2d 589] (1981). The bill would accomplish their objective by permitting Federal, State, and certain other courts, consistent with the appropriate laws, to once again consider military retired pay when fixing the property rights between the parties to a divorce, dissolution, annulment or legal separation."

And Congress clearly felt that spouses aggrieved as a result of *McCarty* should have a chance to rectify the situation when the Report stated at p. 5:

"Former spouses divorced in the interim period between the *McCarty* decision and the effective date of this law *will have the opportunity to return to court to have their decrees modified* in light of this legislation." (Emphasis added)

When Report used the words "divorced in the interim period", I think it clear that the author had in mind a property decree which formed a part of the divorce decree itself and did not intend to turn away a spouse whose divorce occurred prior to *McCarty* but whose property decree came afterward. In short, I believe the Report intended to refer to the date of the decree disposing of property and not necessarily the divorce decree only. The statute itself does not refer to a "divorce" decree but only to "court order" which is defined by the Act itself in § 1408(a)(2) to include a "final decree of divorce, dissolution, annulment or legal separation issued by a court, *or a court ordered, ratified or approved property settlement incident to such a decree. . . ."* (Emphasis added)

Obviously, even though Congress clearly seemed to leave the door open for modification of post-*McCarty* property decree, Congress cannot compel state courts to afford that opportunity. But I do think that the Court should consider the intent of Congress, in 60(b) language, that "it is no longer equitable that the judgment [in *McCarty*] have prospective application." Indeed they rather clearly stated that courts should have the freedom to undo any harm created by the *McCarty* precedent by removing it retroactively. The Act is really a legislative reversal or vacation of *McCarty* and therefore analogous to the judicial reversal referred to in Section 60(b)(5).

Should the Court, therefore, in view of the Act and the congressional intent referred to above reopen the case to consider an amendment to the Order of November 30, 1981 to include the Husband's military pension as specific property subject to division? It is my considered judgment that it would be inequitable not to reopen.

While it is quite true that I did consider the said pension in a general way in the property division and in a specific way in connection with alimony and child support, I do not believe that is enough. Child support terminates when each child becomes ineligible under the statute whereas a property award is permanent; alimony terminates upon death of the spouse or her remarriage whereas a property award either in lump sum or periodic payments would not; alimony is taxable to the Wife and deductible to the Husband whereas a property award is not. These are just a few examples of the significant difference between alimony-child support and property, in addition to the fact that alimony and child support orders may be modified under an entirely different standard.

Although many of the cases cited in the Wife's memorandum are distinguishable on their facts, most of the federal court cases cited there, considered *en toto,* stand generally for the proposition that, where there has been a change in the law affecting substantial rights of a litigant, the courts will usually be rather liberal in reopening otherwise final court orders under Rule 60(b)(5) and/or (6). See, e.g., *Harrell v. Harder,* 369 F.Supp. 810 (D.C.1974); *McGrath v. Potash,* 199 F.2d 166 (D.C.Cir. 1952); *Griffin v. State Board of Education,* 296 F.Supp. 1178 (E.D.Va.1969); *Bailey v. Ryan Stevedoring Co., Inc.,* 443 F.Supp. 899 (M.D.La.1978), rev'd. on other grounds, 613 F.2d 588 (5th Cir.1980); *Theriault v. Smith,* 523 F.2d 601 (1st Cir.1975).

■ The Court understands and generally agrees with the argument advanced by counsel for the Husband that, in general, final court orders should only be vacated where the reasons are substantial. But in this case the law of Delaware prior to *McCarty* was that all pension rights were to be treated as marital property. *McCarty* had the effect of changing Delaware law by carving out an exception for military pensions only. Congress thereupon, legislatively vacated *McCarty* and clearly indicated an intention that persons who had been wronged by *McCarty* could reopen their cases if permitted under state law. A decision to reopen this case is simply a decision to permit the Wife to come in and present

her case under Delaware law as it existed before *McCarty* and as it has existed for litigants whose cases were heard after *McCarty*. To do otherwise would be to carve out a category of people whose cases happened to be decided between June 25, 1981 and September 8, 1982 and deprive them of substantial property interests which all other similarly-situated litigants have been awarded.

I therefore hold that the Motion to re-open the record in these proceedings for the purpose of receiving additional evidence and/or arguments of the parties is hereby granted.