460 So.2d 751 (1984)
Leander MENARD, Plaintiff-Appellant,
v.
Ida Vivian MENARD, Defendant-Appellee.
No. 84-1.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1984.
Oliver Schrumpf, Sulphur, for plaintiff-appellant.
*752 Hunt, Godwin, Painter & Roddy, John S. Hood, Lake Charles, for defendant-appellee.
Before FORET, CUTRER and CULPEPPER[*], JJ.
FORET, Judge.
Leander Menard, plaintiff-appellant, filed a petition to partition community property that he held in common with his former wife, Ida Vivian Menard, defendant-appellee. An appointed notary inventoried and appraised the property. The defendant traversed the inventory of the notary, which failed to include the military retirement pay of the plaintiff. The trial court, in accordance with the Uniformed Services Former Spouses' Protection Act (10 U.S.C.A. § 1408(c)(1)), rendered a judgment designating a portion of plaintiff's military nondisability retirement pay as community property. The plaintiff appeals. We affirm.
Leander Menard entered the United States Air Force on June 7, 1954. On January 17, 1958, he married Ida Vivian Pruitt, in Sherman, Texas. Upon the plaintiff's retirement from the Air Force, the parties came to live in Louisiana.
On June 26, 1981, the United States Supreme Court, in McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), held that federal law precludes a state court from dividing military nondisability retirement pay pursuant to state community property law.
After the McCarty decision, on November 16, 1981, the plaintiff filed for a separation from the defendant. On November 30, 1981, the defendant reconvened. The separation was tried on March 18, 1982. The plaintiff, in accordance with a compromise agreement, moved to dismiss his suit, allowing a judgment to be rendered against him in defendant's reconventional suit for separation.
On July 27, 1982, the plaintiff filed a petition to partition the immovable property he held in common with the defendant. The court appointed a notary, who inventoried and appraised the property.
Before the property was partitioned, the Congress of the United States, on September 8, 1982, adopted the Uniformed Services Former Spouses' Protection Law, Public Law 97-252, now codified in 10 U.S.C. § 1408, providing in Section (c)(1):
"A court may treat disposable retired or retainer pay, payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member, or as property of the member and his spouse in accordance with the law of the jurisdiction of such court."
The defendant moved to traverse the inventory of the property as it did not include the plaintiff's military nondisability retirement payments. On September 26, 1983, after a hearing on the matter, the trial court held that the military retirement payments were community property and partitioned them accordingly.
The issue on appeal, is whether the trial court erred in applying the Uniformed Services Former Spouses' Protection Law to divide community property of a marriage dissolved between the date of McCarty, June 26, 1981, and the effective date of the Act, February 1, 1983.
Prior to McCarty, our courts had recognized that military retirement pay must be classified as community property when acquired during the community. Swope v. Mitchell, 324 So.2d 461 (La.App. 3 Cir.1975) and Moon v. Moon, 345 So.2d 168 (La.App. 3 Cir.1977), writ denied, 347 So.2d 250 (La. 1977). In McCarty, however, the Supreme Court held that federal law precludes a state court from dividing military retirement pay received by the husband.
The Louisiana Supreme Court, in Dedon v. Dedon, 404 So.2d 904 (La.1981), followed McCarty, overruling the prior jurisprudence, and held that under the federal scheme of military retirement benefits, which preempted state community property law, a former wife was not entitled to a *753 community interest in the military retirement pay received by her husband.
Subsequent to McCarty, Congress enacted the Uniformed Services Former Spouses Protection Act, Public Law 97-252 (10 U.S.C. § 1408(c)(1)), hereinafter referred to as the "Act". This Act had the effect of overruling McCarty by removing the federal preemption of state laws in the division of military pensions. The effect of this congressional action was to allow our state courts to render judgments which were consistent with decisions rendered prior to McCarty. Rohring v. Rohring, 441 So.2d 485 (La.App. 2 Cir.1983); Smith v. Smith, 458 A.2d 711 (Del.Fam.Ct.1983); In Re Marriage of Hopkins, 142 Cal.App.3d 350, 191 Cal.Rptr. 70 (1983). Both parties agree.
The plaintiff contends that inasmuch as his marriage with the defendant and the effects thereof ended after June 25, 1981, the date of the McCarty decision, but before February 1, 1983, the effective date of the Act, the McCarty decision should control despite the specific wording in the Act quoted above. We disagree.
Since the adoption of the Act, state courts in Delaware and California, a community property state, found that Congress intended the Act to apply retroactively to the day before the McCarty decision. See Smith and Hopkins, supra.
In Smith, the court found as follows: "It appears rather clear that Congress, in passing the Act, intended to obliterate the adverse effect of McCarty upon the divorced spouse of military personnel by making it retroactive to the date of that decision. The Committee Report which accompanied the bill (copy attached) states at p. 1:
`The primary purpose of the bill is to remove the effect of the United States Supreme Court decision in McCarty v. McCarty, 458 [453] U.S. 210 [101 S.Ct. 2728, 69 L.Ed.2d 589] (1981). The bill would accomplish their objective by permitting Federal, State, and certain other courts, consistent with the appropriate laws, to once again consider military retired pay when fixing the property rights between the parties to a divorce, dissolution, annulment, or legal separation.'"
In Smith, the Delaware court was faced with a similar set of facts. There, as here, the parties dissolved their marriage after the McCarty decision, but prior to the passage of the Act. After the passage of the Act, the wife moved to reopen the case to have a portion of her husband's military nondisability retirement payments allocated to her. The court found that it was Congress' intent to overrule McCarty and applied the Act retroactively. The Delaware court reasoned that if it did not apply the Act retroactively, it would carve out a category of people whose cases happened to be decided between June 25, 1981, and September 8, 1982, and deprive them of substantial property interests which all other similarly situated litigants have been awarded.
In Hopkins, the California court applied the Act retroactively and gave similar reasons as follows:
"Not to apply the Act retoractive to June 25, 1981, would yield far more problems than would any mechanical application of a calendar-determining set of laws. To allow cases decided, but not yet final, either before or during the relatively short interval of McCarty to be subject to the McCarty rule would carve out of the many persons entitled to military pensions a fortunate or unfortunate few who had substantial rights determined by the vagaries of the calendar. It would create a gap of some 20 months in which their future entitlements were or were not to be determined in a manner different from the 40 years before or the indefinite future after. Most importantly, it would allow the happenstance of the calendar to thwart the meaning of Congress when the Congress did quickly and affirmatively act to clearly and fully make these pension rights subject to the state's control. Indeed, not to apply the Act retroactively would be to thwart the *754 very title of the Act, the `Uniformed Services Former Spouses' Protection Act'."
Although the decisions of the Delaware and California courts are not controlling here, we agree with their reasoning. By not applying the Act retroactively, we would carve out a category of people whose cases happened to be decided between June 26, 1981, and February 1, 1983, and deprive them of substantial property interests which all other similarly situated litigants have been awarded.
We find that Congress, in passing the Act, intended to obliterate the adverse effect of the McCarty decision, by making it retroactive to the date of that decision. Therefore, the trial court was correct in declaring the plaintiff's military nondisability retirement pay as community property and partitioning it accordingly.
The plaintiff further contends that should we affirm the trial court's retroactive application of the Act, that the case should be remanded to the lower court for taking of testimony regarding the places and times the plaintiff and defendant were domiciled in community and non-community states, so that the military nondisability retirement payments can be partitioned correctly.
The trial court, after finding the military retirement payments to be community property, partitioned it in the following manner:
"Leander Menard, Social Security No. XXX-XX-XXXX, was in active military service for 21.3 years during which 3.6 years of retirement benefit earnings accrued prior to the marriage with Ida Vivian Menard; therefore, 17.7 years of retirement benefit earnings accrued during the existence of the marriage until retirement and, accordingly, 17.7/21.3 years (83.09859%) of the disposal [sic] retired pay of Leander Menard is community property; accordingly, Ida Vivian Menard, Social Security No. XXX-XX-XXXX, is entitled to payment of one-half of said community portion, or 41.54929% of disposable retired pay since November 16, 1981, and to continue each month thereafter."
The formula used by the court has been used by many courts and is based on a fraction, the numerator of which is the number of years the parties were married while Mr. Menard was in the military and the denominator of which is the total number of years Mr. Menard was in the military. The fraction is 17.7/21.3. This amount is community property and, as co-owner of one-half of the community, Mrs. Menard is entitled to one-half of 17.7/21.3 or 8.85/21.3 of the monthly retirement benefits. Rogers v. Rogers, 401 So.2d 406 (La.App. 1 Cir.1981); Moon and Swope.
Rights to retirement benefits accrue continuously throughout the husband's period of service, and the wife's entitlement to those benefits should be determined under the law of the states in which the parties were domiciled for the respective periods during which retirement benefits accrued, in accordance with the formulas employed in Swope and Rohring. Therefore, the trial court's computation is correct, assuming that the plaintiff and defendant maintained their matrimonial domicile in community property states throughout their marriage.
However, the record fails to disclose any information concerning the origin of the matrimonial domicile or what changes, if any, were made in its location and for how long. The record only discloses that the plaintiff and defendant were married in Sherman, Texas, on January 18, 1958, and that the last matrimonial domicile was established in Calcasieu Parish, Louisiana.
Our recent case of Moreau v. Moreau, 457 So.2d 1285 (La.App. 3 Cir.1984), dealt with the same issue of entitlement to military retirement benefits by a spouse based on whether the benefits had accrued while the parties were domiciled in a community property state. This Court found that Hoover Moreau had been born in Louisiana and joined the service while residing in this State and that, despite subsequent moves out of state and overseas by the parties, Hoover Moreau remained a domiciliary of Louisiana, based on his continuous and substantial *755 contact with the State. Therefore, his military retirement benefits were community property. This Court found LSA-C.C. Art. 46 and LSA-R.S. 1:54 to be controlling.
In this instance, we have none of that information available to us, such as where the matrimonial domicile was located before Louisiana and for how long is unknown. Because the plaintiff contends that the matrimonial domicile existed in non-community property states which, under the laws of those states, may require an alteration in the computation, the case is remanded to the lower court for taking of testimony concerning the location of the matrimonial domicile and for a recomputation in accordance with the laws of the states for the periods of time the parties held their matrimonial domicile there.
For the foregoing reasons, the judgment of the trial court is affirmed and is remanded to the trial court for reconsideration in accordance with the directives contained herein.
Costs in the lower court and on appeal shall be assessed after final disposition of this matter.
AFFIRMED AND REMANDED.
WILLIAM A. CULPEPPER, J. Ad Hoc, dissents in part and assigns written reasons.
WILLIAM A. CULPEPPER, J. Ad Hoc, dissenting in part.
I respectfully dissent from that part of the majority opinion which remands this case to the district court to allow the plaintiff-husband to introduce additional evidence to show the states in which the parties had matrimonial domiciles and the laws of those states regarding community property. I would apply the well established rule that where a party contends that the law of another state applies to certain issues, but has not introduced evidence to show what the law of that state is, it is presumed that such law is the same as that of Louisiana. See Robertson v. Jimmy Walker Chrysler-Plymouth, 368 So.2d 747 (La.App. 3d Cir.1979) and the many cases cited therein.
I would affirm the judgment appealed.
NOTES
[*] Judge William A. Culpepper, Retired, Judge Ad Hoc.