**In re the MARRIAGE OF Jerry Lee QUINTARD, Petitioner-Respondent,**

**and**

**Donna Marie Quintard, Respondent-Appellant.**

**No. 13847.**

Missouri Court of Appeals,
Southern District,
Division One.

May 29, 1985.

James R. Spradling, Esterly, Spradling & Checkett, Carthage, for petitioner-respondent.

Ron Mitchell, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for respondent-appellant.

GREENE, Judge.

Respondent Donna Marie Quintard appeals from an order and judgment entered by the Jasper County Circuit Court on July 11, 1984, which sustained petitioner Jerry Lee Quintard's motion for summary judgment. The summary judgment motion challenged Donna's motion to modify certain provisions of a prior decree which had dissolved the marriage of the parties and granted other relief, including an award of maintenance to Donna, and a division of property.

Donna contends that the trial court erred in sustaining the motion for summary judgment because 1) it failed to reopen the issue of division of Jerry's military retirement benefits, which she was unable to raise at the time of the dissolution hearing because of existing federal law that pre-vented spouses from claiming an interest in military pensions, and 2) it failed to hold that her monthly maintenance award was subject to modification.

At the time of the dissolution hearing in August of 1981, Donna and Jerry had been married 24 years. In the final dissolution decree, which was filed January 15, 1982, the trial court, in addition to awarding Donna custody of the minor child of the parties and $80 a week child support, ordered Jerry to pay her "$750 per month for a period of thirty-six months or until further order of this court." In addition to dividing the marital property, whereby Jerry was awarded items valued at $28,010 and Donna was awarded items valued at $15,263, the trial court ordered Jerry to pay all debts of the parties totaling $24,189.97, plus all outstanding medical bills not covered by insurance that were incurred prior to the date of the dissolution hearing. In addition, the trial court found that Jerry's military retirement benefits, amounting to $1,617.49 a month, were his "sole and separate property," and that Donna had no right to, or interest in, those benefits.

Although the record indicates Donna filed a notice of her intention to appeal from that judgment, her appeal was not perfected. On June 22, 1982, Jerry filed a motion to modify the decree, seeking to be relieved of his maintenance obligation, claiming his income had decreased and that Donna was steadily employed. Donna filed a cross motion to modify, requesting that her maintenance award be raised from $750 a month to $1,000 a month. On September 14, 1982, both motions were overruled by the trial court. On October 4, 1983, Donna again filed a motion to modify alleging that her age and state of health mandated the need for continued maintenance past the 36 month limitation contained in the decree. She also alleged that she had been legally unable to make any claim to Jerry's retirement benefits at the time of the dissolution hearing, but could do so now, because of a change in federal

law. In the prayer of her motion, Donna requested that the retirement benefits be divided equally between herself and Jerry, or, in the alternative, that her $750 a month maintenance award be extended indefinitely past the 36 month limitation period.

Jerry then filed a motion for summary judgment, contending that since the monthly maintenance award was to cease on a date certain, it legally amounted to a lump sum maintenance award, not subject to modification. He also claimed the trial court's declaration that the retirement benefits were his sole and separate property was a judgment which, since not appealed, was final, and therefore, the trial court could not, through a motion to modify the decree, subsequently divide those benefits between he and his former spouse. The trial court sustained the motion for summary judgment.

In her appeal, Donna correctly asserts that before June 26, 1981, Missouri courts held that military retirement benefits were marital property in which a spouse could claim an interest. *See, Sink v. Sink*, 669 S.W.2d 284, 285 (Mo.App.1984). She states that on that date, the Supreme Court of the United States, in the case of *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), ruled that a military pension, under the statutory law at that time, was the sole and separate property of the person who had been in the military and could not be divided between spouses by a state court. Donna alleges that the *McCarty* decision, being in effect at the time of the dissolution hearing, barred her from making any claim to the retirement funds, but that after the dissolution decree was entered, the Congress of the United States, by enacting 10 U.S.C. § 1408 and 5 U.S.C. § 8345 on September 8, 1982, abrogated the doctrine of *McCarty* and provided that military retirement benefits were marital property, capable of division. She contends that the federal statutory sections were retroactive to the date of the *McCarty* decision and, therefore, it was error for the trial court to refuse to reopen the case for determination of the retirement benefit issue.

■ In pertinent part, 10 U.S.C. § 1408 (hereinafter "the Act") provides as follows:

(c)(1) Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

The legislative history of the Act indicates that Congress intended that the Act be applied retroactively to divorces which occurred between *McCarty* and the effective date of the Act.

The purpose of this provision is to place the courts in the same position that they were in on June 26, 1981, the date of the *McCarty* decision, with respect to treatment of non-disability military retired or retainer pay. The provision is intended to remove the federal pre-emption found to exist by the United States Supreme Court and permit State and other courts of competent jurisdiction to apply pertinent State or other laws in determining whether military retired or retainer pay should be divisable. Nothing in this provision requires any division; it leaves that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution. This power is returned to the courts retroactive to June 26, 1981. *This retroactive application will at least afford individuals who were divorced (or had decrees modified) during the interim period between June 26, 1981 and the effective date of this legislation the opportunity to return to the courts to take advantage of this provision.* [Emphasis added.] S.Rep. No. 502, 97th Cong., 2d Session 16, reprinted in 1982 U.S.Code Cong. & Ad.News, 1555, 1596,

1611; *see also*, House Conf.Rep. No. 749, 97th Cong., 2d Session 49, reprinted in 1982 U.S.Code Cong. & Ad.News, 1569, 1571.

Relying on the Act, this court has held that military retired pay is again to be considered marital property. *Coates v. Coates*, 650 S.W.2d 307, 312 (Mo.App.1983); *see also Sink v. Sink*, supra, 669 S.W.2d at 285.

■ Having determined the retroactivity of the Act and the characterization of military retired pay as marital property, the issue now becomes whether Missouri law allows the dissolution decree—some 21 months old when Donna instituted the present proceeding—to be reopened to address the military pension question. Despite her compelling arguments, Missouri law does not allow the reopening of the property division provisions of a final dissolution decree.

Donna bases her arguments on the case of *Smith v. Smith*, 458 A.2d 711 (Del.Fam. Ct.1983), in which the Delaware court sustained wife's motion to reopen the case for the purpose of reconsidering, in light of the Act, the award to husband of his military pension, as mandated by the *McCarty* decision. The military pension was by far the largest single asset involved in the proceeding. Although the court's original decision was over 18 months old, a Delaware procedural rule permits "relief from a final judgment where 'a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment have prospective application; or ... any other reason justifying relief from the operation of the judgment.'" As a consequence of this rule and the expressed congressional intent underlying the Act, the court concluded that "[a] decision to reopen this case is simply a decision to permit the Wife to come in and present her

case under Delaware law as it existed before *McCarty* and as it has existed for litigants whose cases were heard after *McCarty*." *Smith v. Smith*, supra, 458 A.2d at 713–715. Although not cited by Donna, a similar procedural rule and like reasoning compelled the same result in the New Jersey case of *Castiglioni v. Castiglioni*, 192 N.J.Super. 594, 471 A.2d 809 (Ch.1984).

■ On the other hand, unlike Delaware and New Jersey, the Missouri Rules of Civil Procedure do not contain a comparable provision. Indeed, rather than providing a procedural mechanism by which a marital dissolution decree might be re-examined, Missouri law rigorously stresses the finality thereof. For example, under §§ 452.330.4 and 452.360.2,[1] a division of marital property, once final, is not subject to modification. *Leventhal v. Leventhal*, 629 S.W.2d 505, 507[3] (Mo.App.1981). Although these statutes, by their very language, are restricted to "marital property," the concept of res judicata applies to all property covered by the dissolution decree. Here, the trial court entered its decree on January 15, 1982. No appeal therefrom was perfected. Accordingly, at least by the effective date of the Act, February 1, 1983, the trial court's order was final and res judicata as to all property with which it dealt. *State ex rel. McClintock v. Black*, 608 S.W.2d 405, 406–7[1] (Mo. banc 1980); *see also*, 27B, C.J.S., Divorce, § 300(4)(a). As was stated in *Smith v. Smith*, supra, 458 A.2d at 714: "Congress ... legislatively vacated *McCarty* and clearly indicated an intention that persons who had been wronged by *McCarty* could reopen their cases *if permitted under state law*." [Emphasis added.] Under present Missouri law, Donna has established no grounds upon which the trial court's original and now final judgment may be reopened.[2] A party can seek the distribution of an omit-

---

1. Unless otherwise indicated, all references to statutes are to RSMo 1978, V.A.M.S.

2. Donna makes no claim of irregularity, fraud, voidness, or some other ground upon which the judgment might be set aside. *See, Godsy v.*

ted marital asset, *Sink v. Sink*, supra, 669 S.W.2d at 285, but cannot seek the redistribution of property covered by the decree.

By so ruling, we realize that we are carving out a category of persons whose dissolutions were decided between June 25, 1981, and February 1, 1983, and denying to them the right to have a military pension considered as marital property. *Smith*, supra at 715. However, we are constrained by our supreme court's ruling in *McClintock* to do anything else. By reason of *McClintock*, the trial court did not err in granting summary judgment on that portion of Donna's motion to modify seeking reconsideration of the award of the military pension to Jerry as his separate property.

■ In her second point, Donna alleges that the trial court erred in sustaining Jerry's motion for summary judgment because her maintenance award was periodic, and therefore modifiable. Jerry claims that the award was equivalent to maintenance in gross, even though payable in installments, by reason of its termination at the end of 36 months, and therefore not modifiable under the supreme court's ruling in *Doerflinger v. Doerflinger*, 646 S.W.2d 798, 802 (Mo. banc 1983). *See also, Mottel v. Mottel*, 664 S.W.2d 25, 26–27[2–3] (Mo.App. 1984). The dissolution decree itself states that "Petitioner is ordered to pay respondent the sum of $750.00 per month for a period of thirty-six months *or until further order of this court*." [Emphasis added.]

The decree was entered January 15, 1982, and Donna filed the present motion to modify on October 4, 1983, well within the 36 month stated term of the maintenance award. We express no opinion as to what result we would reach had her motion been filed after the 36 month period had expired. *See, Ethridge v. Ethridge*, 604 S.W.2d 789 (Mo.App.1980). Consequently, the issue is

whether the above-quoted decretal language awarded modifiable periodic maintenance or non-modifiable maintenance in gross.

We hold that the language "until further order of this court" effected an award of periodic maintenance which may be modified upon a showing of changed circumstances. By so qualifying the award, the trial court expressed its intent to retain jurisdiction over the matter. There was no such language in the maintenance award considered in *Doerflinger*, a distinguishing factor of paramount importance. According to the observations of the supreme court, "a gross award may be a lump sum payment or the product of periodic payments due to expire on a predetermined date. The common characteristic of both is that the trial court rejected a necessity of the dependent spouse for indefinite continuation of support and has decreed instead the payment of limited sum during a period of readjustment." *Doerflinger*, supra, 646 S.W.2d at 801. Here, rather than rejecting the necessity of Donna's continued support, the trial court expressly confirmed its intent to retain jurisdiction. It is worthy of particular note that the trial court utilized the same language in its award of child support. Considering the decree as a whole, *Gunkel v. Gunkel*, 633 S.W.2d 108, 110[4] (Mo.App.1982), the maintenance award is modifiable. *Cf., Jones v. Jones*, 600 S.W.2d 36, 37[2] (Mo.App.1979), in which the Missouri Court of Appeals, Eastern District, held that similar language in a settlement agreement authorized a modifiable alimony award.

■ In addition, we note that Jerry previously filed a motion to modify the maintenance award, which was denied. Having taking the position that the maintenance award is modifiable, he will not be heard now to protest to the contrary. *See, Gunnerson v. Gunnerson*, 379 S.W.2d 861,

*Godsy*, 565 S.W.2d 726 (Mo.App.1978), appeal dismissed, *439 U.S. 960, 99 S.Ct. 445, 58 L.Ed.2d*

419 (1978).

866–867[5] (Mo.App.1964); *Wesson v. Wesson*, 271 S.W.2d 214, 217 (Mo.App.1954).

In so holding, we do not express any opinion on the merits of Donna's motion to modify the maintenance award. Rather, we simply rule that the trial court is not precluded by *Doerflinger* from considering the merits of her motion. Summary judgment in favor of Jerry on this issue was improvidently granted.

Affirmed in part, and reversed and remanded in part for a hearing on the merits on the maintenance issue.

TITUS, P.J., concurs.

FLANIGAN, J., concurs and files concurring opinion.

FLANIGAN, Judge (concurring).

I concur.

I wish to add a few comments with respect to the principal opinion's treatment of Donna's first point. In *State ex rel. McClintock v. Black*, 608 S.W.2d 405 (Mo. banc 1980), the Supreme Court said, at p. 406:

"[O]nce the time for appeal has run, the order of the trial court, although it has failed to divide all of the marital property, is *res judicata* and *final* as to the property with which it has dealt." (Emphasis in original) Accordingly, a motion to vacate that decree, filed in the dissolution action itself, did not lie.

The Court added, however, the following observation, at p. 407:

"It would seem that if the property not distributed by the order of the trial court *is* marital property (a question we do not decide in this case), a remedy should be made available. Mo. Const., art. I, § 14. We can reasonably anticipate that the General Assembly will fill in this patent gap in the Dissolution of Marriage Law. In the meantime, we suggest that Sharon file in the trial court a separate proceeding seeking equitable relief in this rather unique

fact situation. If a party feels aggrieved, the propriety of this subsequent proceeding, or its result, can be tested on appeal." (Emphasis in original)

The foregoing suggestion may be appropriate here.