**Priscilla Dale DUKES, Plaintiff–Appellant,**

v.

**Gerald Ernest DUKES, Defendant–Respondent.**

No. 18558.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 19, 1993.

Tyce S. Smith, Sr., Smith, Hutcheson and Dunbar, Waynesville, for plaintiff-appellant.

Charles M. Wesley, Waynesville, for defendant-respondent.

SHRUM, Judge.

Appellant, Priscilla Dale Dukes (wife), filed an action in equity against her former husband, Gerald Ernest Dukes (husband). Claiming that the husband's non-disability military pension was omitted from the parties' October 15, 1982, dissolution decree through accident or mistake, the wife sought to have the trial court divide and award to her a proportionate share of that pension. Her request was rejected and this appeal followed. We affirm.

## FACTS

The parties were married on December 5, 1964. Their marriage was dissolved on October 15, 1982. From April 1968 until January 1990, when he retired, the husband was on active duty with the United States Armed Forces. Thus, he served 14.5 years in the military while married to the wife.

The parties' October 1982 dissolution decree approved a "Separation and Property Settlement" agreement that had been signed by them. The decree provided that "[a]ll property and property rights [were] adjudged and settled per the agreement...." In the agreement the parties recited, "There is no non-marital property to be divided...." They then listed and divided marital property without specific mention of the husband's non-disability military retirement pension. Consequently, neither the decree nor the separation agreement mention the pension, either as marital or non-marital property, nor do they specifically set aside or divide the husband's pension.

The agreement does contain a paragraph V entitled "Terms To Be Incorporated In Decree And Restrictions On Modification." Among its many provisions is the following:

B. MUTUAL RELEASES:

1. The Wife, in consideration of the covenants, conveyances, payment, agreements and obligations herein made, assumed and agreed to by Husband, hereby accepts same and acknowledges same to be in full and complete satisfaction of any and all claims, demands of whatsoever nature, both legal and equitable, which she has against the Husband and his property, except the alleged cause of action for dissolution and the covenants and agreements herein provided to be performed by Husband, and agrees that Husband is fully and finally released and discharged from any and all claims, demands, and marital and statutory rights on the part of the Wife against him and his property, save and except those herein set forth to be performed by Husband.

Following the husband's retirement in 1990, the wife filed this case seeking equitable relief. In her equity case she alleged that in the October 15, 1982, dissolution decree and separation agreement "the [husband's] military pension ... was not listed as marital property ... and was not divided by the Court...." Additionally she pled that the "omission of the [husband's] ... pension from the [1982] Decree ... and the resultant failure to award that asset was the result of accident and mistake."

After all evidence was adduced the trial court rendered a judgment adverse to the wife's claim for equitable relief. In doing so the trial court assigned the following as the reasons for its decision:

[T]he court finds from the evidence that at the time of the dissolution, [the wife] was informed that defendant's military pension was marital property and that there is no evidence to support the proposition that the omission of such property from the settlement agreement or the decree of dissolution was the result of fraud, mistake or accident;

THE COURT FURTHER FINDS, from the evidence that plaintiff specifically waived her rights in said pension through the execution of the property settlement agreement for she knew at the time it was executed that said pension was [a] marital asset yet chose not to have any interest therein claimed or divided by said agreement;

FURTHER, and more importantly, plaintiff's claim is barred by Section 516.-120[4] ... the five year statute of limitations for the recovery of personal property.

This appeal followed.

## DISCUSSION AND DECISION

◼ In the argument portion of Point III of her brief the wife takes the position that on October 15, 1982, the husband's military pension was non-marital property as a matter of law.[1] She points out that when "the marriage of the parties was dissolved on October 15, 1992[,] McCarty,[2] was still in effect and as of the date of the dissolution the pension was not subject to division."[3] Continuing, she says that at the time the separation agreement was signed and was incorporated into the decree with the approval of the trial court, "neither the parties, nor the trial court had the authority or jurisdiction to divide the military pension or consider it marital property."[4] We agree with what the wife has said in this regard.

Before June 26, 1981, it was well settled in Missouri that non-disability military retirement pay was marital property in which a spouse could share. *In re Marriage of Quintard*, 691 S.W.2d 950, 952 (Mo.App. 1985) (citing *Sink v. Sink*, 669 S.W.2d 284, 285 (Mo.App.1984)). The law concerning military pensions changed, albeit temporarily, when on June 26, 1981, the United States Supreme Court decided *McCarty*. The *McCarty* court held that in a divorce case, federal law precluded a state court from dividing that type military pension pursuant to state community property laws. *Mote v. Corser*, 810 S.W.2d 122, 123 (Mo.App.1991).

*McCarty* prompted Congress to enact the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C.A. § 1408. Enacted on September 8, 1982, the Act was made effective as of February 1, 1983. *Bross v. Denny*, 791 S.W.2d 416, 419 (Mo. App.1990). It reversed the effect of *McCarty* and restored prior state law. *Murphy v. Murphy*, 763 S.W.2d 237, 239 (Mo.App.1988). See *Sink*, 669 S.W.2d at 285. The relevant portion of the USFSPA states as follows:

Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

10 U.S.C.A. § 1408(c)(1) (1982).

The retroactive language of the USFSPA was analyzed by this court in *Quintard*, 691 S.W.2d at 950. We there relied upon the legislative history of the Act to determine that "Congress intended that the Act be applied retroactively to divorces which occurred between *McCarty* and the effective date of the Act ...", *Id.* at 952[1], and " 'that persons ... wronged by *McCarty* could reopen their cases ...' " but only " *'if*

---

1. Page 26, wife's brief.

2. The reference is to *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), discussed in detail in the text of this opinion.

3. Page 23, wife's brief.

4. Page 24, wife's brief.

*permitted under state law.'* *Id.* at 953 (emphasis in original) (quoting *Smith v. Smith,* 458 A.2d 711, 714 (Del.Fam.Ct. 1983)). In *Quintard* the divorce judgment was final before the effective date of the USFSPA.

Moreover, the *Quintard* decree mentioned the ex-husband's military pension and determined that it was his "sole and separate property" and that the ex-wife had no interest in or right to any part thereof. Under those circumstances we held that the ex-wife had established no grounds upon which the original and final judgment could be modified or reopened to address the military pension question presented by the retroactive nature of the USFSPA. *Id.* at 953. Such result was dictated in part by the fact that Missouri law "rigorously stresses the finality" of the property divisions made in final dissolution decrees. *Id.* "[A] division of marital property, once final, is not subject to modification." *Id.* *See* §§ 452.330.4 and 452.-360.2; *State ex rel. McClintock v. Black,* 608 S.W.2d 405, 407 (Mo. banc 1980). *See also Chrun v. Chrun,* 751 S.W.2d 752, 755 (Mo. banc 1988).

Although we recognized in *Quintard* that we were "carving out a category of persons whose dissolutions were decided between June 25, 1981, and February 1, 1983, and denying to them the right to have a military pension considered as marital property," nonetheless, we were constrained by our supreme court's ruling in *McClintock* from doing anything else. *Quintard,* 691 S.W.2d at 954.

Unlike the movant in *Quintard,* here, the wife did not ask to reopen or modify the original decree. Rather, she pursued the only remedy available to her, a separate suit in equity. *Chrun,* 751 S.W.2d at 755. In so doing she attempted to bring herself within the general rule that when property "is not divided in the course of an action for dissolution of marriage, a subsequent, independent action to divide the omitted property may be brought *if the earlier omission occurred due to fraud, accident or mistake.*" *McElroy v. McElroy,* 826 S.W.2d 105, 106[1] (Mo.App.1992)

(emphasis ours). *See also Doss v. Doss,* 822 S.W.2d 427, 428 (Mo. banc 1992).

The trial court determined, however, that the wife did not show herself to be entitled to equitable relief, in part due to insufficient evidence that fraud, mistake, or accident caused the husband's pension to be omitted from the original decree.

█ Inexplicably, there is no point on appeal challenging the trial court's determination that there was insufficient evidence to grant equitable relief. To us the wife assigns as trial court error only the following:

I.  The trial court erred in holding that plaintiff's claim was barred by Missouri Revised Statutes § 516.-120(4) because said period of limitations was tolled by 50 U.S.C. § 525, commonly known as the Soldier's and Sailor's Civil Relief Act.

II.  The trial court erred in finding that the plaintiff's claim was barred by laches because the defendant made no showing of either the prejudice of the loss of evidence which would support the defendant's position, nor prejudice of a change in defendant's position in a way that would not have occurred but for the delay in plaintiff's filing her equitable action, and because laches is not generally invoked within a period of time less [than] the period by which the cause of action is barred by limitations, said period in this cause of action being tolled by 50 U.S.C. Appx. § 525.

III.  The trial court erred in holding that the appellant waived her rights in the military pension because she knew at the time she executed the property settlement agreement that the said pension was a marital asset when the military pension by operation of law was not a marital asset, and because the respondent failed to plead waiver and the separation agreement and property settlement as an affirmative defense and because said agreement provid-

ed that there was no non-marital property to be divided.

It is, of course, axiomatic that issues not presented in the points relied upon are abandoned or waived and will not be considered by the appellate court. *Boyer v. Grandview Manor Care Center,* 793 S.W.2d 346, 347[1] (Mo. Banc 1990); *Ramacciotti v. Joe Simpkins, Inc.,* 427 S.W.2d 425, 426[1] (Mo.1968); *Livingston Manor v. Dept. of Social Serv.,* 809 S.W.2d 153, 157[5] (Mo.App.1991); *State Farm Mutual Automobile Ins. Co. v. Jessee,* 523 S.W.2d 832, 835 (Mo.App.1975).

No issue having been raised by the wife's Points Relied On as to the correctness of the trial court's finding that the plaintiff's evidence was insufficient to show fraud, accident or mistake, it has been waived. Whether the trial court erred in that determination is not for consideration here. The unassailed finding of fact made by the trial court compels the denial of equitable relief for the wife as a matter of law. Thus, it becomes unnecessary to address the points that were presented by the wife to us.

Nevertheless, because the husband's military pension was the principal asset at stake in this marriage, we have, ex gratia, examined the record to determine whether the trial court committed plain error in denying the wife's equitable claim to a share of the husband's pension. *In Interest of L_E_E_,* 839 S.W.2d 348, 352–53 (Mo.App.1992); *In re Marriage of Edwards,* 838 S.W.2d 494, 497 (Mo.App.1992). In doing so, however, we are mindful of the scope of our review as set out in Rule 73.01(c) and as interpreted in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). *See Cofer v. Price–Cofer,* 825 S.W.2d 369, 372 (Mo.App.1992).

▮ We must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy,* 536 S.W.2d at 32[1]. Credibility of the witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of their testimony. *Herbert v. Harl,* 757 S.W.2d 585, 587[1] (Mo. banc 1988); *Edwards,* 838 S.W.2d at 495[2]. · We will not substitute our judgment for that of the trial court on credibility issues. *Id.*

With the foregoing principles in mind the evidence in the equity case included the wife's testimony that she was represented by counsel in connection with her 1982 dissolution and that both she and her counsel were present when the separation agreement was signed and when the matter was presented to the trial judge on October 15, 1982. Concerning her knowledge as of 1982 about the husband's military pension, the wife testified:

Q. (by husband's counsel) ... Did you have any knowledge that you were entitled to retirement pay?

A. (by wife) Yes.

Q. Your husband's retirement pay?

A. Yes.

Q. And how did you receive that information?

A. Through the newspapers and legal advice through JAG office.

. . . .

Q. (by trial court) ... Had you been reading those newspapers at the time of the divorce or was that later?

A. (by wife) No. During the separation in this I had gone over to the JAG office and I talked with them about it because—He was in the military, so I went to the military lawyer. My first step was—

. . . .

Q. (husband's counsel) Well, you were here at the time that you got the divorce, were you not?

A. (by wife) Yes, I was.

Q. And you didn't make any inquiry then [about the military pension]?

A. It was nothing was ever stated—

Q. On the day of this dissolution?

A. Nothing was ever stated about the retirement pay.

Q. But you knew you were entitled to it?

A. Yes.

The wife further testified that she had signed the separation agreement, that she "[understood] it ... [t]o a degree," and that "having talked with the Army lawyers ... [she] knew at that time that [she was] entitled to a portion of [her] husband's retirement pay."

From this evidence the trial court could have believed, as it presumably did, that there was not the type mistake, accident, or fraud proven that warranted equitable relief. Obvious from her testimony is the fact the wife knew about her husband's military pension. Her testimony is susceptible to the inference that (a) she had read in the newspapers about the then newly enacted USFSPA, (b) she consulted with Army lawyers about the Act, (c) she was correctly advised by them concerning the Act, and (d) she opted to have her marriage dissolved in October 1982 rather than delay until the USFSPA became effective on February 1, 1983.

We have considered the wife's claim, made in the argument portion of Point III of the wife's brief, that there was a mistake shown, as a matter of law, in her testimony that she believed at the time of the divorce that she was entitled to part of her husband's pension when in fact the pension was then non-marital.

We are not persuaded by that argument. First, the trial court was not required to believe that aspect of her testimony. Second, and more fundamental, if she had such a mistaken belief, it was a mistake of law. " 'The law has often been stated that equity will not relieve against a mistake of law, at least where the mistake is one of law pure and simple, whether such mistake is set up for affirmative relief or defensively.' " *Rhodes v. Rhodes' Estate*, 246 S.W.2d 98, 102[6] (Mo.App.1952) (quoting 30 C.J.S., Equity, § 47(b), p. 378). *See generally* 19 Mo.Dig.2d Equity, key number 7 (mistake of law). Moreover, "[e]ven equity will not relieve against mistake when the party complaining had within his reach the means of ascertaining the true state of facts, and, without inducement by the other party, neglects to avail himself of his opportunities of information." *S.G. Payne &*

*Company v. Nowak*, 465 S.W.2d 17, 20 (Mo.App.1971).

For the foregoing reasons the trial court's determination that this was not a case of fraud, accident, or mutual mistake did not result in manifest injustice or a miscarriage of justice; hence, plain error relief per Rule 84.13(c) is unwarranted.

It was the wife's burden to demonstrate reversible error. This she failed to do. The judgment is affirmed.

PARRISH, C.J., and MONTGOMERY, J., concur.